LANGDON C. WEST *as trustee of the estate and effects of Kasper Streich, Bankrupt,* v. THE BANK OF LAHOMA.

(Filed September 8, 1905.)

1. BANKRUPTCY—Money Constitutes Property. As contemplated by the bankruptcy act, 1898, money is property, and a payment of money constitutes a transfer of property.

2. BANKERS LIEN ON DEPOSITS—Promissory Note—Bankruptcy. Where an insolvent person has money on deposit in a bank subject to check, and also owes the bank upon a promissory note, upon such insolvent person being adjudged bankrupt, the bank is entitled to have the amount of the bankrupt's deposit set off against the sum due on the promissory note, and to prove its claim against the bankrupt for the balance.

3. BANKRUPTCY—Bankers Lien—Preferential Transfers. Where an insolvent person borrows money from a bank and executes his note therefor, and deposits the money in said bank subject to his check, said transaction does not constitute a preferential transfer under the bankruptcy act, and the bank may before the depositor is declared a bankrupt, credit the amount of his deposit upon his debt due the bank, and such transaction will not entitle the trustee in bankruptcy to recover the amount of such deposit as a preference.

4. SAME—Showing as to Preferential Transfer—Demurrer. A petition by a trustee in bankruptcy against a creditor of the bankrupt to recover money alleged to constitute a preferential transfer, must, among other averments, show that if the transfer is permitted to stand the creditor will receive a greater percentage of its debt than other creditors of the same class, and failing to show such state of facts, it is not error to sustain a demurrer to such petition.

(Syllabus by the Court.)

*Error from the District Court of Garfield County; before C. F. Irwin, Trial Judge.*

*Stanley, Vermilion & Evans,* and *Charles West,* for plaintiff in error.

*Horace Speed* and *H. J. Sturgis* for defendant in error.

Opinion of the court by

BURFORD, C. J.: The plaintiff in error, Langdon C. West, as trustee of the estate of Kaspar Streich, a bankrupt, filed his petition in the district court of Garfield county to recover $1300 from the Bank of Lahoma, which it is claimed belongs to the estate. It is alleged in the petition substantially that an involuntary petition in bankruptcy was filed against Streich on the 16th day of May, 1902, and that on July 8, following he was adjudicated a bankrupt. It is further alleged that on May 9th he borrowed from the Bank of Lahoma $1800 and executed his note to the bank therefor, payable May 12, 1902. That Streich deposited said sum of $1800 in the bank and was given credit therefor. That said note was secured by a chattel mortgage upon a stock of merchandise, furniture and fixtures, situated in the store room of Streich, in Woods County, Oklahoma. That on May 13, 1903, the bank without releasing or waiving its mortgage with the intent to receive a preference over the other creditors of Streich, and while he was insolvent and the bank knowing he was insolvent, applied $1300 of said deposit toward the payment of the debt due the bank upon said promissory note, and gave Streich credit on said note for said sum. The trustee in bankruptcy demanded a return of said money, and the bank refusing to surrender the same, he demands judgment against the bank for the said sum, with interest and costs.

The Bank of Lahoma demurred to the petition on the ground that the facts alleged do not constitute a cause of action in favor of the trustee in bankruptcy. The court sustained the demurrer, and rendered judgment for the defendant. The plaintiff appealed.

The only question presented is, whether or not under the facts stated in the petition, the trustee is entitled to recover the money which it is alleged the bank received as a preference. It is clear from the allegations that Streich, while insolvent, borrowed from the bank $1800 and received credit in the bank as a depositor for that amount. The relation of debtor and creditor was thereby created as to this deposit. Streich owed the bank $1800 for which the bank held his note payable May 13. On that day the bank gave him credit on his note for the balance of the deposit, $1300, and charged him with that sum on his deposit account. At that time Streich was insolvent, and three days afterward his creditors began proceedings against him to have him declared a bank-rupt. It cannot be questioned but that the effect of this transfer or payment to the bank had the effect to prefer the bank to the amount of the deposit of $1300, but is it a preference prohibited by the bankruptcy law, and is the trustee entitled to recover the same?

The questions presented by the record have been before the supreme court, court of appeals or district courts of the United States, and we shall content ourselves by following these decisions.

In the case of *Pirie v. Chicago Title and Trust Company,* 182 U. S., 438, the supreme court of the United States had under consideration the various provisions of the bankruptcy act relating to preferential transfers. In that case the bankrupts were merchants; the creditors had sold them goods and merchandise, and within four months prior to the adjudication in bankruptcy the bankrupts paid to the creditor certain sums on account. The debtors were insolvent; the creditor did not know of the insolvency, and had no reason to believe that the

debtors were insolvent. It was claimed by the trustee that the payment constituted a preferential transfer, and the cause finally reached the highest court in the land for interpretation of the provisions of the national bankruptcy law. The court said:

"The solution of the question depends primarily upon the interpretation of subdivisions "a" and "b" section 60, of the law of July 1, 1898, c. 541, and certain related sections. Subdivision "a" of section 60 is as follows:

"*Preferred Creditors.*—*a.* A person shall be deemed to have given preference if, being insolvent, he has procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class."

It will be observed that payments in money are not expressly mentioned. Transfers of property are, and one of the contentions of appellants is that by "transfers of property" payments in money are not intended. The contention is easily disposed of. It is aswered by the definitions contained in section 1. It is there provided that "transfer" shall include the sale and every other and different mode of disposing of or parting with property or the possession of property, absolute or conditional, as a payment, pledge, mortgage, gift or security. It seems necessarily to mean that a transfer of property includes the giving or conveying anything of value—anything which has debt paying or debt securing power.

We are not unaware that a distinction between money and other property is sometimes made, but it would be anomalous in the extreme that in a statute which is concerned with

the obligations of debtors and the prevention of preferences to creditors, the readiest and most potent instrumentality to give a preference should have been omitted. Money is certainly property, whether we regard any of its forms or any of its theories. It may be composed of a precious metal, and hence valuable of itself, gaining little or no addition of value from the attributes which give it its ready exchangebility and currency. And its other forms are immediately convertible into the same precious metal, and even without such conversion have, at times, even greater commercial efficacy than it. It would be very strange, indeed, if such forms of property, with all their sanctions and powers, should be excluded from the statute, and the representatives of private debts which we denominate by the general term "securities" should be included. We certainly cannot so declare upon one meaning of the word "transfer." If the word itself permitted such declaration, which we do not admit, the definition in the statute forbids it. "Transfer" is defined to be not only the sale of property, but "every other mode of disposing or parting with property." All technicality and narrowness of meaning is precluded. The word is used in its most comprehensive sense, and is intended to include every means and manner by which property can pass from the ownership and possession of another, and by which the result forbidden by the statute may be accomplished—a preference enabling a creditor "to obtain a greater percentage of his debt than any other creditors of the same class."

It is here settled that money is "property" within the meaning of the bankruptcy law, and that a payment of money is a "transfer."

In *Jaquith v. Alden,* 189 U. S. 78, the same court put its own construction upon the holding in *Pirie v. Chicago Title and Trust Co.* After reciting the facts in that case the court said:

"The judgment below was affirmed by this court and it was held that a payment of money was a transfer of property, and when made on an antecedent debt by an insolvent was a preference within section 60 'a', although the creditor was ignorant of the insolvency, and had no reasonable cause to believe that a preference was intended. The estate of the insolvent as it existed at date of the insolvency, was diminished by the payment, and the creditor who received it was enabled to obtain a greater percentage of his debt than any other of the creditors of the same class."

This principle is applicable to the cause under consideration. The Bank of Lahoma by the transfer of the $1300 deposit and application of said sum to the payment of the debt due from the bankrupt to the bank, was, under the rule announced above, a preference within section 60 "a", if the bank had reasonable grounds to believe that Streich was insolvent at the time of the transfer, and the effect of such transfer will be to enable the bank to obtain a greater percentage of its debt than any other creditors of the same class.

In *Swarts v. Fourth National Bank,* 117 Fed., 1 the circuit court of appeals, speaking by Justice Sanborn, said:

"The plain intention of congress and the legal effect of the paragraph, were to make every transfer of any of the insolvent's property by means of which a larger percentage would be paid out of his estate to any creditor, or any claim, than every other creditor and every other claim of the same class, would receive a preference, to be surrendered or avoided under the other provisions of the statute. The meaning and effect of section 60 are the same as though

it declared every transfer of his property by an insolvent to be a preference which has the effect to  enable any of his creditors to obtain a greater percentage of his debt out.of the property of the insolvent 'than any other of such creditors of the same class'. The test of a preference under the act is the payment, out of the bankrupt's property, of a larger percentage of the creditors' claim than other creditors of the same class receive, and not the benefit or injury to the creditor preferred."

When the result of the transactions has been to decrease the indebtedness of the insolvent to one creditor at the expense of his estate, it is a preference.  *In re Cotton Export & Import Co.*, 121 Fed. 663; *In re Lyon*, 114 Fed. 326; *Livingston v. Heineman*, 120 Fed., 786; *In re Christensen*, 101 Fed., 802.

These cases seem to settle the doctrine that a payment of money constitutes a transfer, and that if the effect is to diminish the assets of the bankrupt and to enable the creditor who receives the transfer to obtain a greater per cent of his claim than other creditors of the same class, then such transaction is a  preferential  transfer.  The primary  test then is, has the creditors of the same class been deprived of anything by the transfer?  If they have not, it must follow as a necessary result that the transaction is not within the denunciation of the statute.

Section 68—a, bankrupt act, 1898, is as follows:

"In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor, the amount shall be stated and one debt shall be set off against the other and the balance only shall be allowed or paid."

Under this section it was held by Mr. Justice Baker, in *In re Myers*, 99 Fed. 691, that money on deposit in a

bank to the credit of a bankrupt may be set off against the indebtedness of the bankrupt to the bank upon promissory notes, and in the case of *In re Little,* 110 Fed., 621, Mr. Justice Shiras. enunciated the same doctrine.

The supreme court of the United States in *New York County National Bank v. Massey,* 192 U. S. 138, in construing this provision of the bankruptcy act held, that insolvents by depositing money in a bank upon an open account subject to check, do not thereby make a transfer of property amounting to a preference which will deprive the bank of its right under section 68 "a" to set off the amount of such deposit remaining to the depositor's credit on the date of the adjudication in bankruptcy, and to prove its claim against the bankrupt estate for the balance. It must be conceded that these decisions embrace the law of this case. The Bank of Lahoma, as shown by the averments in the petition, loaned to Streich the sum of $1800 and Streich executed his promissory note to the bank for said amount. The bank gave him credit on deposit account for the proceeds of the loan. The bank then became his debtor to the amount of the deposit. He became the debtor to the bank in the amount of the note. The deposit was subject to check and the transcript of account from the bank's books which accompanies the petition as an exhibit, shows that the bank paid out on his check $500 of the deposit before the note matured. On the date the note fell due Streich had on deposit of the original sum borrowed $1300, and the bank applied this sum on his note. and gave him credit for payment of that sum and charged the same to him on the account. The deposit in the first instance did not create a preference in favor of the bank, for the reason that the bank became his debtor for the full

amount of the deposit; his available assets were not diminished by the deposit in the bank, and his other creditors of the same class were in as good a position as they were before. These mutual transactions brought about the exact condition mentioned in section 68 "a", a case of mutual debts and mutual credits between the estate of the bankrupt and the creditor, and after the adjudication the bank would have been entitled to have had set off the amount of Streich's deposit against the amount due on his note to the bank, and the right to have the balance allowed against the estate. Then, if this was the right of the bank in case Streich was adjudicated a bankrupt, has it put itself in any worse position by making the transfer of the deposit to the payment of its debt before the adjudication in bankruptcy? Will any creditor of the estate receive a less percentage of his claim under present conditions than he would have received had the credit or set off been allowed by the trustee in bankruptcy? If the effect of this transfer by the bank had not been to enable it as a creditor to obtain a greater percentage of its debt than any other creditors of the same class, then such transaction does not constitute a preference. We are unable to see how, by doing itself that which the law requires the trustee in bankruptcy to do, the bank should be required to lose the credit the law permits it to have. No advantage has been acquired by the bank, and no detriment has resulted to the other creditors.

In order for the petition to be sufficient to withstand a general demurrer, it was required to show that if the transfer of the credit by the bank is permitted to stand, the bank will receive a greater percentage of its debt than other

creditors of the same class. *Schreyer v. Citizens' National Bank*, 77 N. Y. Supp. 494.

We think the court committed no error in sustaining the demurrer to the petition. The judgment of the district court is affirmed, at the costs of the plaintiff in error.

Irwin, J., who presided in the court below, not sitting; all the other Justices concurring.