### FIRST STATE BANK v. HUNT.

No. 9175.—Opinion Filed Dec. 2, 1919.

(Syllabus by the Court.)

1. Banks and Banking—Payment of Depositor's Indebtedness.

Where a customer of a bank has on deposit in said bank a sum of money subject to his check, the bank has a right to appropriate and apply the same to the satisfaction and discharge of any indebtedness due the bank by said depositor.

2. Same—General Deposit.

Money deposited in a bank and subject to the check of the depositor without any agreement as to how the same is to be paid out, or without any agreement that it is deposited to be applied to any special indebtedness, is a general deposit.

3. Garnishment—Garnishee's Right to Retain Set-Off.

The principle is well settled that the garnishee or trustee may retain in his hands, out of the funds of the principal defendant, an amount equal to all sums of which he might legally avail himself by way of set-off, if the action was brought by defendant himself against such garnishee or trustee.

Error from District Court, Carter County; W. F. Freeman, Judge.

Action by H. T. Hunt against A. B. Mays & Company, a copartnership, and another; the First State Bank of Ringling, garnishee. Judgment for plaintiff, and the garnishee brings error. Reversed and remanded, with directions.

D. F. Spradling, for plaintiff in error.

H. H. Brown and R. B. Brown, for defendant in error.

McNEILL, J. This action was commenced April 4, 1916, by H. T. Hunt in the district court of Carter county against A. B. Mays & Co., a copartnership composed of A. B. Mays, J. O. Jones, and J. W. Stansell, and the Fidelity and Deposit Company of Maryland, and at the same time a garnishee summons was issued to the First State Bank of Ringling, Oklahoma. On the 13th day of April, 1916, the First State Bank of Ringling, Oklahoma, filed its affidavit denying liability as garnishee. On May 9, 1916, the plaintiff filed a motion to traverse the answer of the garnishee, and on the 12th day of May, 1916, served notice on the garnishee that the plaintiff elected to take issue with the garnishee on its answer. Judgment was rendered against A. B. Mays & Co. and against the Fidelity and Deposit Company of Maryland on the 20th day of May, 1916, by default for $775, and interest and costs.

Thereafter the case came on for trial on the answer of the garnishee. On the trial of this issue, the court found at the time of the service of the garnishee summons, the bank was indebted to the said A. B. Mays & Co in the sum of $651.40, and the court rendered judgment against the bank for said amount. From said judgment the bank has appealed.

For reversing said judgment the plaintiff in error relies upon three propositions; the third being, "the finding and judgment of the court are not sustained by sufficient evidence and are contrary to law." The facts in this case are practically undisputed. It appears from the record that A. B. Mays & Co. had a contract for the construction of a school building at Ringling, Oklahoma, and another at Dundee, Oklahoma. That about the first of the year, 1916, they were carrying a checking account with the First State Bank of Ringling. The partnership filed a letter with the bank, directing that the

checks of the partnership should be paid only when signed by J. O. Jones.

On the 22d day of February, 1916, the firm of A. B. Mays & Co. was indebted to the bank on a note in the sum of $4,500, and an overdraft of about $700. At the time the note for $4,500 became due, to wit, February 22, 1916, A. B. Mays informed the officers of the bank that as soon as they received their final warrants from the school board at Ringling he would settle with the bank. On the 24th day of February, A. B. Mays received two warrants, one for $3,000, and one for $424, from the school district as a final settlement for his contract, and he, in company with the traveling auditor of the Minnetonka Lumber Company, took an automobile and went to Waurika, Oklahoma, and presented the warrants to the county treasurer at Waurika, Oklahoma, and received two checks for the same amounting to $3,424. A. B. Mays immediately indorsed the checks to the Minnetonka Lumber Co., to whom the partnership owed $1,000, and he instructed Mr. Cogwill, representing the Minnetonka Lumber Co., to wire the balance of the money, to wit, $2,424, to the American National Bank at Oklahoma City and deposit it in the name of Minnetonka Lumber Company. The other two partners, Mr. Jones and Mr. Stansell, missed Mr. Mays from Ringling, and sought the services of Mr. Stotts, cashier of the Ringling Bank, to find out if Mays had received the warrants and left with them. In communication over the telephone with the county treasurer, at Waurika, they were informed that the warrants had been cashed by Mays. They then communicated with Mr. Cogwill, and after some controversy Mr. Cogwill returned to Waurika, Oklahoma, and deposited the $2,424 to the account of A. B. Mays & Co. in the Waurika National Bank. While J. W. Stansell and Mr. Stotts were at Waurika, and immediately after Mr. Cogwill made the deposit in the Waurika National Bank, Mr. Stansell drew a check on the Waurika Bank in the sum of $2,424, payable to the First State Bank of Ringling, and delivered the same to Mr. Stotts, the cashier, who in turn issued to Mr. Stansell a deposit slip in favor of A. B. Mays & Co. for said amount. The deposit slip was dated February 26, 1916.

On the 29th day of February, 1916, the bank applied all the funds in the bank belonging to A. B. Mays & Co. to the payment of the indebtedness due the bank, as follows: First, to the payment of their overdraft, and the balance upon their note of $4,500, still leaving a balance due on their note of several thousand dollars. About the first of March J. O.

Jones drew a check, payable to the Bank of Atoka, on the First State Bank of Ringling for $1,000, and signed the same "A. B. Mays and Co., by J. O. Jones," which the bank refused to pay. Thereafter in April, 1916, this action was started and the bank garnisheed.

It is uncontradicted that, at the time of the service of the garnishee summons, there were no funds of Mays & Co. on deposit in the First State Bank of Ringling, and that the firm of Mays & Co. was indebted to the bank in a sum in excess of $2,000.

In order to support the judgment of the court, it is necessary to do so on one of three theories:

First: That the bank had no authority to apply the funds of Mays & Co. to the indebtedness of Mays & Co. to the bank.

Second: Was the deposit of $2,424 a special deposit?

Third: Did the bank pay out funds of Mays & Co., contrary to the orders of Mays & Co?

The first question has been settled by this court in the cases of West, as Trustee, v. The Bank of Lahoma, 16 Okla. 328, 85 Pac. 469; Walters National Bank v. Bantock, 41 Okla. 153, 137 Pac. 717; Farmers State Bank of Temple v. Andruss, 63 Oklahoma, 165 Pac. 172. The court, speaking through Justice Hardy, stated as follows:

"If in fact Andruss was indebted to the bank and had on deposit in the bank a sum of money to his credit, the bank had the right to appropriate the sum on deposit to his credit and apply the same to the satisfaction and discharge of any indebtedness owing by him to the bank."

While it is true the partners stated they gave the bank no authority to apply the funds of Mays & Co. on this overdraft and note, yet this was unnecessary. The bank having a right to do so, it was unnecessary to obtain authority from any of the firm of Mays & Co.

The second question, Was this a special deposit? The deposit slip showed that it was a general deposit. Mr. Stansell, who made the deposit, testified that he directed it to be deposited to the checking account of Mays & Co., and the same was deposited in the checking account of Mays & Co. While it is true that A. B. Mays, the gentleman who mysteriously disappeared with the warrants and turned them over to the Minnetonka Lumber Co., and directed that the money be telegraphed to Oklahoma City to the credit of the Minnetonka Lumber Co., stated the

money was intended to pay the bills of Mays & Co. on the building in question. The evidence disclosed that the partnership desired this money to pay the bills and accounts of Mays & Co., made in erecting the school building at Ringling, but nothing was ever said to the bank respecting how the money should be used, nor for what purpose. The evidence disclosed that the $4,500 note Mays & Co. owed the bank and the $700 overdraft were for money that had been borrowed to pay for material and labor in the erection of this school building. There is no evidence in the case that would support a finding that this was a special deposit.

There was evidence introduced to support the theory that A. B. Mays had signed the partnership name to certain checks and the bank had honored the same, although the checks were not signed by Jones. These checks were drawn on the account of A. B. Mays & Co., and there is some evidence that about $650 of this money was supposed to be used by A. B. Mays in gambling. No objection was ever made by any of the partners regarding the bank paying these checks. A. B. Mays was one of the partners and the partnership has never complained that these checks were wrongfully paid; but for the sake of argument, admitting that the plaintiff in this case could question the right of the bank to pay the check signed Mays & Co., by A. B. Mays, who was one of the partners, it would still be immaterial, for the undisputed evidence discloses that Mays & Co. owed the bank some $2,700, and it would have the right to offset that sum against any amount the bank owed Mays & Co. The general rule on this question is laid down in 20 Cyc. 1079 as follows:

"The principle is well settled that the garnishee or trustee may retain in his hands, out of the funds of the principal defendant, an amount equal to all sums of which he might legally avail himself by way of set-off, by any of the modes allowed either by the common or statute law if the action were brought by defendant himself against such garnishee or trustee."

Admitting, for the sake of argument, that the bank had wrongfully paid $650 on checks unauthorized, then Mays & Co. would still be indebted to the bank over $2,000. By applying the law to the evidence in this case, there is no evidence to support this judgment. There was no money in the bank at the time of service of the garnishee summons, nor did the bank owe Mays & Co. anything at the time, nor had they owed them anything for more than thirty days prior to the time of the service of the summons and garnishment, and the undisputed evidence is that Mays & Co. is indebted to the bank between $2,000 and $3,000.

For the reasons stated, the judgment of the court being clearly against the weight of the evidence, and there being no evidence to support the judgment, the case will be reversed and remanded with instructions to dismiss the garnishee.

PITCHFORD, JOHNSON, HIGGINS, and BAILEY, JJ., concur.