## GILLETTE v. LIBERTY NAT. BANK of TULSA.

No. 14302—Opinion Filed Sept. 18, 1923.

(Syllabus.)

1. **Banks and Banking—Right of Bank to Apply Deposits to Payment of Debt.**
Where a customer of a bank has on deposit in the bank a sum of money subject

to his check, the bank has the right to apply same to the discharge of any indebtedness due the bank by said depositor.

### 2. Same—Statutory Lien of Bank.

Under section 7434, Comp. Stat. 1921, a banker has a general lien, dependent on possession, on all property in his hands belonging to a customer, for balance due the bank from such customer in the course of business.

### 3. Same—Basis of Bank's Right.

The right of the bank to appropriate a deposit of a customer to the discharge of the indebtedness of the customer to the bank grows out of the relation of debtor and creditor existing between the bank and the depositor, and is in reality a right of set-off.

### 4. Same—Actual Ownership of Deposit in Third Person—Effect.

The weight of authority is to the effect that the bank can apply a deposit to past due indebtedness of a customer, even though the deposit was in fact owned by another, if the bank had no notice of the true ownership of the fund; but this rule does not exist where the deposit was made in such manner as not to create the relation of debtor and creditor between bank and the person in whose name the deposit was made.

### 5. Same—Relation of Debtor and Creditor in Deposits.

The relation of debtor and creditor between the bank and the depositor is contractual, and no one can create this relation between the bank and depositor without authority from the depositor, express or implied, and where deposit is made in the bank by a third person to the credit of another without his knowledge or consent, and without authority, the relation of debtor and creditor does not exist.

### 6. Same—Absence of Relation—Conversion by Bank of Deposit.

W. deposited a fund to the credit of P. in the bank without authority from P... either express or implied. This fund was in reality owned by G., but neither the bank nor W. had knowledge of that fact. The bank applied the deposit in satisfaction of past due indebtedness of P. to the bank. Held, that this deposit was not such as to create the relation of debtor and creditor between the bank and P., and, as the property was not in fact that of P., the bank had no lien thereon under the provisions of section 7434, Comp. Stat. 1921, and, since the relation of debtor and creditor between the bank and P. did not exist, the bank had no right of set-off and the appropriation of the fund by the bank amounted to a conversion.

Error from District Court, Tulsa County; Z. I. J. Holt, Judge.

Action by Carl W. Gillette against the Liberty National Bank of Tulsa. Judgment for defendant, and plaintiff brings error. Reversed and remanded, with directions.

M. A. Breckinridge and Chas. R. Bostick, for plaintiff in error.

Bell & Fellows, for defendant in error.

COCHRAN, J.    This action was commenced by the plaintiff in error to recover from the defendant in error the sum of $1,875 which it was alleged belonged to plaintiff in error, and which defendant in error had converted to its own use. The parties will hereinafter be referred to as plaintiff and defendant, as they appeared in the trial court. The plaintiff in error and Ira D. Pilcher entered into a contract with S. A. Wilson for the sale of an oil and gas lease, and it was agreed that an assignment of the lease would be deposited in the Liberty National Bank of Tulsa by the parties of the first part, and the party of the second part would deposit bonds of the value of $4,000 to be held in escrow by the bank with copy of the contract until the title to the oil and gas lease had been examined and approved. If the title was approved, it was agreed that the party of the second part would pay the parties of the first part an additional sum of $3,750, whereupon the assignment and bonds were to be delivered to the party of the second part. The bank entered into an escrow agreement on April 12, 1921, which, among other things, provided:

"The said escrow agreement and enclosures will be delivered to the parties named or to whom they may jointly direct upon the receipt by the bank of the written consent or order of both parties to the delivery."

The title was approved, and on April 25, 1921, S. A. Wilson borrowed some money from the Liberty National Bank and deposited $1,875 in this bank to the credit of Ira D. Pilcher and $1,875 to the credit of Carl W. Gillette. Thereupon the bank delivered to Wilson the assignment and bonds. This delivery was without the knowledge or consent of either Pilcher or Gillette. Pilcher was indebted to the bank, and the amount deposited to his credit was at once credited on his note and charged against the deposit and a letter written to him advising him of the deposit and application on his indebtedness to the bank. A letter was also written to Gillette, advising him that Wilson had deposited money in the bank and that $1,875 had been placed to his credit. On April 13, 1921, Pilcher had executed to Carl W. Gillette an assign-

ment of the amount due him under the Wilson contract in payment of a note due Gillette by Pilcher; however, neither the bank nor Wilson had notice of this assignment at the time the deposit was made and the amount credited on the Pilcher indebtedness to the bank. As soon as Gillette received his letter, he went to the bank and drew out the $1,875 which had been placed to his credit and ascertained that the remainder had been deposited to Pilcher's credit, but did not ascertain that it had been applied on Pilcher's indebtedness to the bank, and he did not at that time notify the bank that he claimed the money or demand that it be paid to him under his assignment from Pilcher. In his testimony he stated that he thought the way to handle the matter was to see Pilcher and get a check for the deposit. Within the next day or two, he did see Pilcher and was advised by Pilcher that the bank had appropriated the deposit, having credited the same on his note to the bank. Gillette then went to the bank and advised the bank of the situation and demanded the money, which demand was refused and, thereupon, Gillette instituted this suit. At the conclusion of the testimony, the trial court instructed a verdict for defendant.

In applying the Pilcher deposit on his indebtedness to the bank, the defendant relied on the provisions of section 7434, Comp. Stat. 1921, which is as follows:

"A banker has a general lien, dependent on possession, upon all property in his hands belonging to a customer for the balance due him from such customer in the course of business"

—and the rule announced by this court in several cases, which is well stated in the syllabus of First State Bank v. Hunt, 77 Okla. 4, 185 Pac. 1089, is as follows:

"Where a customer of a bank has on deposit in said bank a sum of money subject to his check, the bank has right to appropriate and apply the same to the satisfaction and discharge of any indebtedness due the bank by said depositor."

The authorities make a distinction between a lien on property of a customer of a bank which is in the bank's possession, which lien is created by the above statute, and the so-called lien on a general deposit of a customer. A general deposit is not the property of a depositor, but is the property of the bank, and by reason of the deposit the relation of debtor and creditor exists between the bank and the depositor and the so-called lien is in reality a right of set-off.

If the defendant was entitled to apply Pilcher's deposit to his indebtedness to the bank, it was either because the fund left by Wilson with the bank to the credit of Pilcher was the property of Pilcher, or because it was such a deposit as to create the relation of debtor and creditor between Pilcher and the bank. It was not the property of Pilcher, because he had executed an assignment thereof to Gillette and title thereto was really in Gillette; so it becomes necessary to ascertain whether this was such a deposit as to create the relation of debtor and creditor between Pilcher and the bank. If it was, the great weight of authority is to the effect that the bank could apply a deposit to past due indebtedness, even though the deposit was in fact owned by Gillette, if the bank had no notice of such ownership. Arnold v. San Ramon Valley Bank (Cal.) 194 Pac. 1012, and an exhaustive discussion in the note to this case contained in 13 A. L. R. 324.

It is conceded by the defendant that the bank violated the terms of the escrow agreement in delivering the assignment to Wilson before the money was paid to the parties of the first part, but defendant contends that the plaintiff, instead of repudiating the transaction as he had the right to do, accepted the situation and ratified the delivery. Upon being advised of the transaction, the plaintiff could have repudiated the same or he could have ratified the delivery and demanded the money which had been paid over to the bank, and upon the failure of the bank to pay same to him, could have sued the bank for conversion, or, upon ratification of the delivery, could have also ratified the deposit of the money. It is our opinion that the uncontradicted facts show a ratification of the delivery, but fail to show acquiescence in the deposit or a ratification thereof. This deposit, then, is to be considered as one made by a third person without the knowledge or consent of the person in whose name it was deposited (Pilcher) or the real owner of the deposit (Gillette) and with full knowledge on the part of the bank that the money was being placed on deposit instead of being paid in accordance with the provisions of the contract. Did this transaction constitute a deposit? A deposit rests upon a contract between the bank and the depositor, either express or implied, but in the instant case there was no contract, either express or implied, between the bank and either Gillette or Pilcher, and the action of the bank and Wilson without ratification by Gillette or Pilcher would not create the relation of

debtor and creditor between them and the bank. In the case of an ordinary general deposit, title passes to the bank, but such is not true in this case, as the person in whose name the deposit was entered did not consent thereto. In these circumstances the appropriation of the fund by the bank as a general deposit was unauthorized and amounted to conversion of the fund, and the cases relied upon by the defendant as to the right to a set-off have no application. The distinction between those cases and the instant case is clearly stated in the editor's note to Patek v. Patek (Mich.) 35 L. R. A. (N. S.) 461, as follows:

"But few cases have considered the question as here raised, which in some respects is distinguishable from cases where the person making the deposit had possession of the money under some arrangement which would have justified him in depositing it, temporarily at least, to the credit of the owner. Ordinarily, depositing money in a bank creates between the bank and the person credited therewith the relation of debtor and creditor. It is a contract relation which cannot be created without the consent or acquiescence of both parties. The relation cannot be created by a third person, without authority, express or implied, in that regard, depositing in a bank money to the credit of another. Such a deposit is not binding upon the latter unless with knowledge of the fact he consents thereto or acquiesces therein, or by his conduct becomes estopped to deny the authority to make the deposit. It follows that a person making an unauthorized deposit under such circumstances thereby converts the fund, and is guilty of a conversion. The relation thus tortiously created, between the bank and the owner of the money —the person to whose credit the unauthorized deposit is made—is clearly not that of debtor and creditor, but the bank, as to such person, stands in the position of one receiving and holding the property of another without his authority or consent, and hence without warrant of law; therefore, the deposit does not become the property of the bank."

In 3 A. & E. Enc. of Law, 835, it is said:

"The right of the bank to apply deposits to the extinguishment of the depositor's indebtedness as it matures grows out of the doctrine that the relationship between the bank and depositor is that of debtor and creditor."

In Mingus v. Bank of Ethel (Mo.) 117 S. W. 683, it is said:

"The rule has no application to the facts of this case, for the reason that defendant did not acquire the check as a deposit 'in the course of business' with Windle. Windle did not make or authorize the deposit with

defendant. It was the result of a mistake, which both Windle and plaintiff asked its cashier to correct. * * * The defendant, having obtained possession of the funds by mistake, and not for value, cannot be said to have any equitable claim to such funds. In other words, its hands are not clean. No injustice is done defendant in compelling it to surrender the deposit, as it parted with nothing in the transaction."

In McLennan v. Farmers' Sav. Bank of Arispe (Iowa) 109 N. W. 291, it is said:

"The placing of the credit to the defendant bank in the St. Joseph bank was the result of a mistake on the part of the commissionmen, and not by direction of any party to this litigation. In these circumstances it surely cannot be seriously claimed that defendant is entitled to the money as against the true owner. No cases have been cited which so hold, and we do not think that any can be found. If Webb were a trustee and, as such, had intentionally made a deposit in the defendant bank, and defendant had received it without notice of its trust character, and had applied it upon Webb's indebtedness, we should have an entirely different case; one to which the authorities cited by appellant might apply, but that is not the situation here. There was no trusteeship except ex maleficio and there was no deposit by the trustee. The deposit, such as it was, was by another, without any authority or direction in the premises. Such a deposit should not be held to deprive the plaintiffs of their property or of its proceeds."

See, also, Cady v. So. Omaha Nat. Bank (Neb.) 65 N. W. 906; Phillips v. Suffolk Savings Bank (Mass.) 107 N. E. 401; Winslow v. Harriman Iron Co. (Tenn.) 42 S. W. 698; Leech v. First Nat. Bank of Maryville (Mo. App.) 74 S. W. 416.

In Winslow v. Harriman Iron Co., supra, the court said:

"The making of a deposit creates the relation of debtor and creditor as between the bank and the depositor. It is a contract whereby the bank undertakes to receive the money, and pay it out on the depositor's check, and it also involves an implication that, if the depositor should become indebted to the bank, the bank would have the right to apply the deposit to the indebtedness. Morse, Banks (2nd Ed.) pp. 28-32. No one can create this relation between the depositor and the bank without authority from the depositor. In such case the person who holds the depositor's money, and so deposits it without authority, is guilty of a conversion of the fund, and the bank receiving it is likewise guilty of conversion, at all events, if it is so related to the payee making the deposit as to affect it with notice, as in the present case. The

legal relation then existing between the bank and the person whose money is put into the bank without authority is not that of a technical depositor, but merely the relation that exists between persons when one gets possession of the property of the other without authority of law, or wrongfully asserts dominion over it, falling distinctly within the definition of conversion."

See, also, Brown v. Daughterty, 120 Fed. 526.

In the case at bar, the deposit was made by Wilson to the credit of Pilcher without his knowledge or consent and at a time when he was no longer the owner of the fund. Had Pilcher made the deposit in the bank or had it been made with his knowledge and consent, an entirely different situation would be presented; but, in the circumstances presented here, we have nothing to create a contract between the bank and Pilcher, either express or implied. The title to the deposit never passed to the bank, and it at no time had the right to treat it as a general deposit. According to the uncontradicted testimony, Gillette being the owner of the property at the time it was deposited in the bank in the name of Pilcher, is entitled to recover from the bank for the conversion of the fund.

It is our opinion that the judgment of the trial court should be reversed, and cause remanded, with directions to grant a new trial and proceed further in accordance with the views herein expressed.

JOHNSON, C. J., and KANE, KENNAMER, NICHOLSON, and MASON, JJ., concur. McNEILL, J., dissents.