## KASPAREK, Adm'x, v. LIBERTY NAT. BANK OF OKLAHOMA CITY.

No. 22240.    Nov. 27, 1934.

Rehearing Denied Jan. 8, 1935.

Warren K. Snyder and George J. Eacock, for plaintiff in error.

Everest, McKenzie, Halley & Gibbens, for defendant in error.

RILEY, C. J. Herein is presented the question of the right of a bank to apply the balance of a customer's deposit to the payment of a note held by the bank, executed by the depositor, where the note matured after the death of the maker.

On August 18, 1928, Joe Kasparek executed and delivered his promissory note to the Liberty National Bank of Oklahoma City, defendant in error herein, in the sum of $5,000, due and payable September 17, 1928, with interest at 10 per cent. from maturity. It appears to have been a renewal of a note for a like amount given in February, 1928.

The maker died on or about September 2d, and shortly thereafter Mayme Kasparek was appointed administratrix of his estate. At the time of his death there was a balance in his deposit of $2,159.97. No payments had then been made upon the note. After the death of Joe Kasparek there was deposited by the administratrix the sum of $1,818.33 in the account, making a balance in the account on September 22, 1928, of $3,938.70. On the latter date the account was transferred on the books of the bank to Mayme L. Kasparek, administratrix, and the account of Joe Kasparek was closed.

On November 17, 1928, the bank applied said sum of $3,938.70 to the Joe Kasparek note, and thereafter filed its claim with the administratrix for what it claimed was the balance due on the note, viz., $2,021.70. The claim was disallowed and the bank in due time commenced this action against the administratrix to recover said sum.

Defendant resisted the entire claim and prayed for judgment for the return of all the money so applied, with interest.

A jury was waived and the cause was tried to the court, resulting in a judgment for the return to defendant of the sum of $1,818.33, deposited by her after the death of Joe Kasparek, and in favor of plaintiff, in effect allowing the application of the amount of the deposit in the bank at the time of the death of Joe Kasparek on the note, and for judgment for the balance due thereon in the sum of $3,840, with interest thereon at the rate called for in said note from September 18, 1928, and $284 attorneys' fees, as a claim against the estate, as if duly allowed by the administratrix and approved by the county court.

From said judgment defendant appeals.

The principal contention of defendant is that the bank had no right to apply the balance on deposit at the time of the death of Joe Kasparek, for the reason that the note it held was not then due, and that when the note did mature on September 17, 1928, the bank had lost its right to so apply said deposit by reason of the death of the depositor. In this connection defendant takes the position that the right given to a bank to apply any part of a general deposit of a customer to a debt due it from the customer arises or is given by section 7434, C. O. S. 1921 (10969, O. S. 1931), commonly known as the "Banker's Lien Law," and that the right arising thereunder is no greater than a like right given by power of attorney authorizing the bank to apply any part of the maker's deposit in such bank to a note held by such bank, and that such right ceases with the death of the depositor.

In support of this proposition defendant cites Gardner v. First Nat. Bank of Billings (Mont.) 25 P. 29, and several cases of kindred nature. There the bank was defending entirely upon a power of attorney given to the bank by the depositor authorizing the bank to apply his deposits to the discharge of his notes held by the bank before maturity. It was there held that the authority or power of attorney was a naked power not coupled with an interest, which ceased with the depositor's death, and that the bank had no power thereunder, after notice of the death of the depositor, to so apply such deposits, citing Hunt v. Rousmanier, Adm'r, 8 Wheat. 174, 5 L. Ed. 589.

It is contended that the so-called "Banker's Lien Law" is of no greater efficacy than a power given by contract. That the death of the depositor "revoked, so to speak, the power under the statute." That the power given by the statute could not be and was not exercised by the bank before the death of the depositor because his debt to the bank was not then due, and the power given under the statute, not being one coupled with an interest, did not survive. That it could not be exercised after the maturity of the note "because death strikes down all of those things and terminates that which otherwise might exist."

But it may not be said that the right of a bank to apply deposits of its customer, or so much thereof as may be necessary, to the payment of a debt due it by the depositor, arises wholly from the so-called lien law or is founded solely upon the lien theory. While the right so to do is frequently referred to as a lien and it is often said that the right is in the nature of a lien, strictly speaking it is not such, for it is generally held that the relation between a bank and its general depositor is that of debtor and creditor. That the money deposited is no longer the property of the depositor, but becomes the property of the bank and is used as such in its general business, and the bank merely becomes debtor to the depositor to the extent of the general deposit, such debt being payable upon demand. The bank could not be the owner of the fund so deposited and at the same time have a lien thereon.

This right of a bank is more accurately a right of set-off, for it rests upon, and is co-extensive with, the right to set-off as to mutual demands. 3 R. C. L. 588.

But whether the right of the bank be

called a lien or a right of set-off, so far as matured indebtedness of the bank is concerned, the practical effect is the same. The cross demands are satisfied so far as they are equal, leaving whatever balance may be due on either as the true amount of indebtedness from the one party to the other.

In Shuman v. Bank, 27 N. Dak. 599, L. R. A. 1915A, 728, it is held: Section 6288, Rev. Code 1905 (identical with section 7434, C. O. S. 1921 (sec. 10969, O. S. 1931), providing for the banker's lien, relates merely to such property as is held by the banker as bailee, and does not relate to a general deposit.

It is also there held that the right of a bank to offset, as against a general deposit, a past due debt owing to the bank by the depositor is not founded upon the theory of a lien, but upon the right of offset and application of payments.

In Gillette v. Liberty Nat. Bank of Tulsa, 95 Okla. 76, 218 P. 1057, it is held:

"The right of the bank to appropriate a deposit of a customer to the discharge of the indebtedness of the customer to the bank grows out of the relation of debtor and creditor existing between the bank and the depositor, and is in reality a right of set-off."

The right may therefore exist in the absence of the banker's lien statute, though it is often said that the right arises from or is founded upon such statute.

As to the right to apply upon an unmatured obligation, it is generally held that in the absence of insolvency the right does not exist. Plaintiff concedes this to be the general rule. This rule, however, is not universally applied where the depositor dies before the maturity of his indebtedness to the bank.

In Little's Adm'r v. City Nat. Bank (Ky.) 74 S. W. 699, it is held:

"Where decedent had money on deposit in a bank at the time of his death, and the bank held a note against him for a less amount, which matured the day after his death, it was entitled to set off the amount of the note against the deposit, and pay the decedent's administrator the difference."

In that case it is said:

"The right of a bank to apply a deposit to the extinguishment of the depositor's indebtedness grows out of the doctrine that the relationship between the bank and the depositor is that of debtor and creditor."

But it is also said in effect that the bank had a lien on the deposit, and that in the earlier case of Masonic Savings Bank v. Bangs' Adm'r, 8 Ky. Law Rep. 16, it was said that the right to this lien is recognized by an unbroken line of American decisions.

In Pendleton v. Hellman Comm. Trust & Savings Bank (Cal.) 208 P. 702, it is held:

"Where a depositor died insolvent, the bank had a right to set off a note in its favor against the deposit, though the note was not then due, and even assuming that Civ. Code, sec. 3054, giving a banker a lien on property in his hands for any balance due him, applies to deposits of money."

And:

"A bank's right of set-off as against an insolvent depositor, who is also indebted to the bank, is not confined to the statutory lien conferred by Civ. Code, sec. 3054, on property in the hands of the bank for any balance due."

In case of insolvency the great weight of authority appears to be in favor of the right to set off an unmatured debt. 3 R. C. L. 593.

The rule appears to be otherwise in Pennsylvania. Bosler's Adm'rs v. Exchg. Bank, 4 Penn. St. 32.

Jordan v. Nat. Shoe & Leather Bk., 74 N. Y. 467, holds against the right of offset whether as to unmatured debts of the testator or intestate, whether the estate be solvent or insolvent, where the action is one at law. But that case, as well as Patterson v. Patterson, 59 N. Y. 574, holding to the same effect, is based upon the provisions of the statute of that state relative to set-off as it existed at the time the action was commenced, which do not appear to be the same as in this state.

The general rule is that where the depositor becomes insolvent the bank is entitled to apply this deposit to an unmatured debt to the bank. 7 C. J. 656.

In support of the rule there stated, decisions from some 15 states are cited. Decisions from two states are cited holding to the contrary.

The theory upon which the majority rule is based appears to be that insolvency renders all debts due and furnishes of itself a sufficient ground for set-off. Pendleton v. Hellman Comm. Trust & Sav. Bk., supra.

The right of a bank to set off the amount of an unmatured note it holds against the deposit of a deceased customer is upheld in Conquest v. Broadway Nat. Bk. (Tenn.)

183 S. W. 160; Ford's Adm'r v. Thornton (Va.) 3 Leigh, 695.

A case squarely in point is Ainsworth v. Bank of California (Cal.) 51 P. 952. There the facts are almost identical with the instant case, except that the action was commenced by the executrix to recover a deposit of testator in defendant bank at the time of his death, and decedent's estate was not insolvent. The bank claimed the right to set off an unmatured note amounting to more than the deposit, and filed its claim against the estate for the difference. The note it held was due at the time the action was commenced. The statutes cited are similar to or identical with ours. The questions involved are identical. Therein it was said:

"We cannot assent to the doctrine that our statute does not apply because the cross demand of the bank was not due when plaintiff's testate died. It was due when action was brought. * * * The claim of respondent that by the death of plaintiff's testator the demand passed eo instante to his representatives, and took date by relation to the date of the testator's death, is correct only to this extent, that it passed subject to any right of set-off or counterclaim in appellant. The demand was not an asset of the estate, in the sense claimed, and to the exclusion of appellant's right of set-off. As was said in Richardson v. Parker, 2 Swan (Tenn.) 529; 'The notes and accounts of the deceased are not assets, if they have been discharged by payment, the creation of adverse accounts, or otherwise. It is only what remains after all just settlements with the debtor of the estate which goes into the funds for distribution.' * * * The purpose of the law, we think, is to ascertain the balance existing, and to give to both the claimant and the estate the benefit of all just offsets, whether the estate be solvent or insolvent. As was said in Aldrich v. Campbell, 4 Gray. (Mass.) 284; 'The settlements with such estates (insolvent) are final, and all mutual demands are to be balanced. Claims not liquidated, and debts absolutely due, though payable in the future, are to be included. The balance found upon such adjustment is the only debt remaining. In the case of an insolvent estate of one deceased, all claims existing at the time of the death are to be set off. If this is sound law in the case of insolvent estates—and we think it is—it certainly must be so if the estate be solvent, for no harm can come to anyone by applying the rule in the latter case."

We think the reasoning therein is sound and the rule just and proper. It works no hardship or injustice whether the estate be solvent or insolvent. But if insolvency makes any difference, the record clearly shows the estate of Kasparek to be insolvent, and that there is less than half enough assets in the estate to pay the general unpreferred claims, saying nothing about expense of administration, administrator's fees, and attorney's fees.

The judgment of the trial court follows substantially the rule adopted in Ainsworth v. Bank, supra, and should be, and is hereby, affirmed.

CULLISON, V. C. J., and OSBORN, BUSBY, and WELCH, JJ., concur.