**AMERICAN CATTLE SERVICES, INC., Appellee,**

v.

**SECURITY NATIONAL BANK AND TRUST COMPANY OF NORMAN, Oklahoma, Appellant.**

No. 52324.

Court of Appeals of Oklahoma, Division No. 1.

April 22, 1980.

Released for Publication by Order of Court of Appeals May 22, 1980.

Anthony M. Massad, Frederick, for appellee.

Philip Warren Redwine, Wm. Lee Borden, Jr., Norman, for appellant.

BOX, Judge:

An appeal by Security National Bank of Norman, Oklahoma, one of the defendants below, from a judgment in favor of Plaintiff below American Cattle Services, Inc. Mike Vanzant, d/b/a Vanzant Cattle Services was the other Defendant below but is not a party to this appeal. However, his interaction with these parties is essential to the disposition of the case on appeal. Therefore, for purposes of clarity, we will refer to the Bank as Appellant, to American Cattle Services, Inc. as Appellee, and to Vanzant by name.

Vanzant was indebted to Appellant for loans to finance his cattle operations and was behind in his payments. Thus, Appellant agreed to allow Vanzant to sell part of his stock on which the Appellant held security interests. Vanzant contacted Appellee; and Appellee, pursuant to contract, agreed to conduct the sale, collect all monies, deduct expenses, and remit a net proceeds check to Vanzant. The purpose of the sale was to have the net proceeds apply to Vanzant's past due indebtedness to the Appellant. It is uncontroverted that Appellant was aware of Vanzant's contract with Appellee and was in agreement with it. There is disagreement between Vanzant and Appellant as to actual application of these proceeds. The disagreement is immaterial to this appeal per se but does emphasize that the net proceeds of the sale were earmarked from the beginning of the various transactions for a single purpose—to reduce Vanzant's indebtedness to Appellant.

Through a series of misunderstandings between Appellee and Vanzant, the net proceeds check was made out to Vanzant for an amount which exceeded the amount due Vanzant by $7,770. It is this $7,770 which is in controversy here. When Vanzant received the check, he was unaware of Appellee's accounting error and forwarded the check to Appellant bearing his endorsement and the notation "for deposit only." Upon receipt of the check, the Appellant contacted Vanzant to ascertain if the check represented the proceeds of the agreed sale. Then the Appellant made necessary payments out of the fund represented by the net proceeds check, which were incidental to the sale, and appropriated the remainder of the check to apply against Vanzant's indebtedness to it. The Appellant has maintained throughout this litigation that it was unaware of any claims of the Appellee to the fund until *after* it set—off Vanzant's indebtedness.

Appellee, upon discovering his accounting error, contacted Vanzant and together they

contacted Appellant for the purpose of recovering the $7,770. The Appellant refused to hand it over, and Appellee brought suit against both the Appellant and Vanzant, on a theory of conversion as to the $7,770. The matter was tried to the court without a jury and the trial court found as evidenced by this journal entry:

The court specifically finds that there has been no wrongdoing by any party, but that the issue is title to Seven Thousand Seven Hundred and Seventy Dollars ($7,770.00), erroneously deposited in the Security National Bank and Trust Company, Norman, Oklahoma, by Mike Vanzant, which said sum, the bank makes claim under the "Banker's lien" or a right of set–off. The court specifically finds that the bank's right can only apply to the extent of Mike Vanzant's ownership in the fund, and that Mike Vanzant had no claim to or interest in the Seven Thousand Seven Hundred and Seventy Dollars ($7,770.00), and that judgment should be awarded to the plaintiff against both Mike Vanzant and the Security National Bank and Trust Company, Norman, Oklahoma, for such sum, with judgment awarded over to the Security National Bank and Trust Company, Norman, Oklahoma, against Mike Vanzant, d/b/a Vanzant Cattle Company, for such sum as the Security National Bank and Trust Company, Norman, Oklahoma, pays to the plaintiff on the judgment herein.

■ From this judgment, the Appellant perfected this appeal. In its brief Appellant asserts the judgment is in error for the following reason:

There was no finding by the trial court that appellant Bank had knowledge of appellee's error until after it exercised its right of "set–off". Without such a finding, ... the Court, as a matter of law, was in error in its holding that appellant Bank's right could only apply to the extent of defendant Vanzant's ownership in the fund.

Thus, the Appellant's argument is that its action was proper, regardless of who owned the funds, if it acted prior to any knowl-edge on its part that in fact someone other than their customer laid claim to the funds. For this contention, the Appellant relies on 42 O.S. 1971, § 32, commonly called the "Banker's lien" statute, or the common law right of "set–off" and cites us *Gillette v. Liberty National Bank of Tulsa*, 95 Okl. 76, 218 P. 1057, as authority for said contention:

In applying the Pilcher deposit on his indebtedness to the bank, the defendant relied on the provisions of section 7434, Comp.Stat. 1921, [42 O.S. 1971, § 32] which is as follows:

"A banker has a general lien, dependent on possession, upon all property in his hands belonging to a customer for the balance due to him from such customer in the course of the business,"

and the rule announced by this court in several cases, which is well stated in the syllabus of *First State Bank v. Hunt*, 77 Okl. 4, 185 P. 1089, as follows:

"Where a customer of a bank has on deposit in said bank a sum of money subject to his check, the bank has a right to appropriate and apply the same to the indebtedness due the bank by said depositor."

The authorities make a distinction between a lien on property of a customer of a bank which is in the bank's possession, which lien is created by the above statute, and the so–called lien on a general deposit of a customer. A general deposit is not the property of a depositor, but is the property of the bank, and by reason of the deposit the relation of debtor and creditor exists between the bank and the depositor, and the so–called lien is in reality a right of set–off.

If the defendant was entitled to apply Pilcher's deposit to his indebtedness to the bank, it was either because the fund left by Wilson with the bank to the credit of Pilcher was the property of Pilcher, or because it was such a deposit as to create the relation of debtor and creditor between Pilcher and the bank. It was not the property of Pilcher because he had executed an assignment thereof to Gil-

lette, and title thereto was really in Gillette; so it becomes necessary to ascertain whether this was such a deposit as to create the relation of debtor and creditor between Pilcher and the bank. If it was, the great weight of authority is to the effect that the bank could apply a deposit to past–due indebtedness, even though the deposit was in fact owned by Gillette, if the bank had no notice of such ownership.

Also in *Ingram v. Liberty Nat. Bank & T. Co. of Oklahoma City*, 533 P.2d 975, 977, the Court again emphasizes the effect of the "Banker's lien" statute by stating:

> The statute uses the term "lien." This is not an accurate description of the right given a bank to apply deposits of its customer to the payment of a debt due it by the depositor. The money deposited is no longer the property of the depositor, but becomes the property of the bank, and the bank becomes debtor to the depositor. This right of a bank is more accurately a right of set–off for it rests upon, and is co–extensive with, the right to set–off as to mutual demands. *Kasparek v. Liberty Nat. Bank*, 170 Okl. 207, 39 P.2d 127.

So, if the Appellant is to prevail on his contention, the funds must either belong to Vanzant or be the result of a debtor–creditor relationship established between the Appellant and Vanzant as the result of a general deposit.

All parties testified that the $7,770 does not belong to Vanzant so the Appellant cannot prevail on the lien theory. Thus, we must determine if the alleged deposit by Vanzant with Appellant constituted a general deposit.

First, we must ascertain what, under the law, our courts consider a general deposit to be. In *Shull v. Town of Avant*, 159 Okl. 271, 15 P.2d 49, the court stated:

> Money which is turned over to the officers of a bank without any request that it be kept separate from the other funds of the bank, *which is entered upon the books as a general deposit and a certificate of deposit issued for the amount,* and which

is later withdrawn by check, has all the characteristics of a general deposit, and is entirely lacking in any of the essential elements of a special deposit.

\* \* \* \* \* \*

A bank deposit, without any limitations, restrictions, or qualifications, *such as are usually made in the due course of business, subject to be drawn out by the depositor on demand, is a "general deposit,"* and creates the legal relation of debtor and creditor, between the bank and depositor; in legal effect the deposit is a loan to the bank. This is equally so whether the deposit is of trust moneys or funds which are impressed with no trust, provided the act of depositing is no misappropriation of the fund. The bank simply becomes indebted to the depositor in his fiduciary capacity. [Emphasis added by this Court.]

Now, we determine if the check sent to Appellant fits the description recognized as a general deposit. The evidence reveals that in fact the check was never credited to Vanzant's account. Appellants' Vice President testified that "I wanted the money from the proceeds of the sale to be applied to the note and not to be deposited, to be paid out." Thus, it is apparent the deposit was never subject to being withdrawn by Vanzant, and since it was not, it was not a general deposit to which the Appellant had a right of "set–off." The cases cited herein conclusively show that the Appellant could impose a lien on funds belonging to Vanzant or could "set–off" a general deposit creating a debtor–creditor relationship as to that particular deposit. The Appellant's action falls within neither category, and was thus unauthorized as to the true owner of the funds. The lack of notice contended by the Appellant is relevant *only* when the deposit is a general one, and under the undisputed evidence in this case this deposit does not qualify as a general deposit.

It is fundamental that in action tried to a trial court, the findings are entitled to the same consideration and weight afforded a jury verdict. Consequently, if there is any competent evidence to support

the finding, it will not be reversed on appeal. *Pracht v. Oklahoma State Bank*, 592 P.2d 976, 978.

For the reasons stated herein, we affirm the trial court in all respects.

The Appellee, being the prevailing party on this appeal, shall not be subject to the costs thereof. It is ordered that all costs be taxed against the Appellant, including the costs during appeal originally imposed on Appellee by order of this Court in having the transcript transcribed and sent to this Court pursuant to Rule 1.20(g) of the Rules of Appellate Procedure, 12 O.S. 1971, Ch. 15, App. 2.

AFFIRMED.

ROMANG, J., concurring.