R. C. L. p. 389; 2 R. C. L. Supp. p 1008; 4 R. C. L. Supp. p. 664; 5 R. C. L. Supp. p. 553.

---

## ZOLLINGER et al. v. FIRST NAT. BANK OF OKLAHOMA CITY.

No. 16529. Opinion Filed April 6, 1926.

Rehearing Denied July 5, 1927.

**1. Banks and Banking—Banker's Lien on Deposit—Conditions.**

The right of the defendant to exercise its banker's lien in the application of funds held by the bank to the payment of indebtedness owing by a depositor presupposes: (1) That the fund deposited in the bank by the debtor was the property of the latter. (2) That the fund was deposited without restrictions and was not a special fund. (3) An existing indebtedness then due and owing by the depositor to the bank.

**2. Same—Trust Funds not Subject to Lien —Bank's Notice of Nature of Deposit a Question of Fact.**

The banker's lien under section 7434, C. O. S. 1921, does not attach to funds of a stranger placed in the bank by a depositor, and such funds cannot be applied in satisfaction of the indebtedness of the depositor when the bank had probable notice of the trust fund character of the deposit, and therefore did not induce the advancement of the credit to which it was applied, or cause the bank to alter its relation to the debtor. And the question of the bank's notice or knowledge is a question of fact for the jury, to be determined from the evidence.

**3. Same — Deposits by Maker of Secured Notes not Subject to Lien Unless Collateral Shown Insufficient.**

Where a bank loans money to a customer on a promissory note and takes collateral security for the payment of the note when due, the bank cannot appropriate the depositor's money and apply it upon the note before the same is due, in the absence of a clear showing that at the time of making the appropriation of the depositor's money the collateral security so taken was not of sufficient value to pay the amount due on such note, but must first exhaust its remedy against such collateral security.

**4. Same—Bank's Knowledge of Trust Fund Nature of Deposit a Question of Fact.**

When a bank loans money to an investment company and has knowledge in a general way that the investment company in making, negotiating, and selling notes secured by mortgage on real estate, the question of whether the bank's knowledge of the fact that the investment company is col-

lecting interest and principal on such notes and depositing the same in the bank and checking against the deposit in favor of the holder of the notes and mortgages, is such as to put it on notice of the trust fund character of the deposit, is a question of fact for the jury, and it is error o. the court to sustain a demurrer to plaintiff's evidence, where there is any evidence reasonably tending to sustain the allegations of notice or knowledge in the plaintiff's petition

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Oklahoma County; William H. Zwick, Judge.

Action by Sam Zollinger and Belle Zollinger against the First National Bank of Oklahoma City, to recover money entrusted to the Collins Investment Company to pay certain mortgages and deposited in defendant bank. From judgment sustaining defendant's demurrer to plaintiffs' evidence, plaintiffs appeal. Reversed and remanded.

J. B. Dudley and Kent Shartel, for plaintiff in error.

Wilson & Wilson, for defendant in error.

Opinion by RUTH, C. Sam Zollinger and Belle Zollinger brought their action against the First National Bank of Oklahoma City, seeking to recover $1,087.82, on deposit with the defendant bank in the name of the F. B. Collins Investment Company.

Plaintiff had secured a loan of $1,000 from the investment company secured by mortgage, which mortgage had by the investment company been assigned to the American Life Insurance Company of Des Moines, Iowa, which in turn assigned it to the American Life Insurance Company, of Detroit, Mich. About February 21, 1923, plaintiff made application to the Kansas-Oklahoma Joint Stock Land Bank, of Kansas City, Kan., for a loan of $11,000 to take up the $1,000 loan, and a mortgage loan of $8,500 on other lands. The application was approved for $10,000, and the land bank forwarded its check for $10,410.20 to the Collins Investment Company, being the amount necessary to pay off the two loans. and requested the Collins Investment Company to pay these loans and forward releases. The land bank's check was made payable to the order of the Collins Insurance Company, which company deposited it in the defendant bank and issued its checks against the same. One check for $1,087.72 was forwarded to the assignee of the $1,000 mortgage, and when it was presented to defendant payment was refused because

of "insufficient funds," and the check was only protested on May 11, 1923.

The Collins Company was engaged in the farm loan business, and was making, negotiating, and selling mortgages on real estate, which fact was known to the defendant. The Collins Company had on February 27, 1923, made arrangements with the defendant for a loan of $40,000, and gave its note for that amount, due May 27, 1923, and deposited with defendant, as collateral, second mortgage and commission notes representing a face value of $71,760.53. The agreement further provided that the Collins Company was at all times during the life of the note to keep a balance of 20 per cent. of the loan on deposit with defendant. Under the agreement, had it been insisted upon and enforced, the defendant was only actually loaning the investment company $32,000, as defendant was always to have $8,000 of the Collins Company money in its possession. However the defendant breached this portion of the agreement by permitting the balance to fall far below the 20 per cent., but this is not material to the issues.

On May 10, 1923, the Collins Investment Company had on deposit with defendant $2,708.11, and plaintiff alleges the check of the Collins Company to the American Life Insurance Company of Detroit was presented on this date. A receiver was appointed for the Collins Company about noon on May 10, 1923, and the defendant appropriated the $2,708.11, and applied it upon the Collins Company $40,000 note, which was not then due, and for which defendant held the collateral. This transfer or appropriation was not actually recorded by the bank until May 11, 1923, when the check was protested, and the record is not perfectly clear as to whether it was presented the 10th or 11th of May, before or after this transfer was actually recorded, and no one but the officials of the defendant bank knew the exact hour of its presentation.

All these facts were proven at the trial, the vice president of defendant bank testifying. however, that while the bank officials knew, in a general way, the business of the Collins Company, they did not know it was receiving money to pay off loans and was collecting interest on loans and forwarding it to the holders or assignees of mortgages negotiated by the Collins Company, and it is argued in their brief that, not having knowledge of the trust fund character of the deposit, they had the right to transfer this money and apply it upon the $40,000 undue note.

At the conclusion of the plaintiffs' evidence, defendant interposed a demurrer thereto, which was by the court sustained and plaintiffs appeal.

The questions here presented are: Does a bank have the right to appropriate a depositor's balance in its hands, and apply it to the payment of a note or obligation not yet due, and for the payment of which note or obligation when due, the bank holds collateral security, the giving of which security by the depositor was the consideration for the loan or obligation? And was the nature of the depositor's business such, and were the proven facts such, as would put the bank upon notice of the trust fund character of the deposit, so as to entitle the plaintiff in this action to have the cause submitted to a jury on the question of notice?

Section 7434, C. O. S. 1921, provides:

"A banker has a general lien, dependent on possession, upon all property in his hands belonging to a customer, for the balance due to him from such customer in the course of business."

We have carefully examined the authorities presented by briefs of both plaintiffs and defendant defining bankers' liens upon deposit, and the closest approach to the instant case will be found in Parker v. First National Bank of Muldrow, 96 Okla. 70, 220 Pac. 39, where it is said:

"A bank has an equitable right of offset against the deposits made with it by an insolvent, where the insolvent's debt to the bank is not due."

And the court further said:

"Independent of statute, it may generally be said that insolvency, when applied to a person, firm, or corporation engaged in trade, means inability to pay debts as they become due in the usual course of business."

If this rule were applied strictly, every person, firm, or corporation, who was compelled, by reason of slow collections, increase of means of increased production to new fields, to ask an extension of his or its notes and was not able to pay in cash the very day his obligation fell due, would be insolvent, and his bank deposit subject to appropriation by the bank, thus financially ruling him, though his assets be ever so much greater than his liabilities, so the rule must be applied to the facts in each case.

In Parker v. First National Bank, supra, a careful reading of the case discloses Parker's notes were not due until February 28th and March 8, 1917, respectively, and on February 28th the bank applied $250 on the note due that day, and on March 8th the bank applied $296 on the note due on that date, and the opinion does not state when the checks were drawn or presented upon which payment was refused. Further, it was never claimed the money so appropriated was other than the money of Parker, and the bank did not have security for the notes, as in the instant case.

In First State Bank v. Hunt, 77 Okla. 4, 185 Pac. 1089, there was an overdraft of $700, and an overdue note in the bank, and the bank held no collateral security, and there was no suggestion that the deposit was a trust fund or belonged to any one but the depositor.

Practically the same state of facts is found in Arnold v. San Ramon Valley Bank (Cal.) 194 Pac. 1012, and all other cases cited by defendant in error.

In Southwest National Bank v. Evans, 94 Okla. 185, 221 Pac. 53, this court held:

"The right of plaintiff to exercise its banker's lien in the application of funds held by the bank to the payment of indebtedness owing by a depositor, presupposes: (a) That the fund deposited in the bank by the debtor was the property of the latter; (b) that the fund was deposited without restrictions and was not a special fund, and (c) an existing indebtedness then due and owing by the depositor to the bank."

And this court further held:

"It would be equally inequitable to give effect to the banker's lien in applying the funds of a stranger placed in the bank by the depositor, in satisfaction of the indebtedness of the latter, when the bank had probable notice of the special character, and therefore did not induce the advancement of the credit to which they were applied, or cause the bank to alter its relation with the debtor."

In the body of the opinion the court said:

"The presence of the fund in plaintiff's bank had not caused * * * it to alter its position with relation to the depositor."

In the case last cited the facts are almost parallel with the instant case. That case was a question of a deposit by a live stock commission merchant. In the instant case the Collins Investment Company was engaged in negotiating, making, and selling farm mortgage loans. The bank officials knew "in a general way" its business transactions, but disclaim actual knowledge of the fact that the Collins Company collected interest at intervals, and the principal at maturity, and forwarded it to the investors to whom it had sold the notes and assigned the mortgages, but we think the question of notice and knowledge was for the jury.

The bank loaned the Collins Company $40,-000, on more than $71,000 worth of collateral security, and not upon the amount of its deposits or its volume of business, and the deposit of the $10,410.20, received from the land bank, did not alter its relation to the depositor. On March 30, 1923, before the Collins note was due, it had on deposit more than $30,000; on May 5, 1923, it had on deposit more than $12,000. This was after the check of the land bank was deposited, and to have permitted the defendant to apply this $12,000 to the note of $40,000, against which it had security, would have left plaintiff with their mortgages on his property in sums of $10,410.20, $8,500, and $1,087.82, as no doubt the bank could have proved the insolvency of the Collins Company as of May 5, 1923, as a receiver was appointed May 10, 1923.

It is stipulated in the record that on May 10, 1923, the Collins Company had on deposit $2,708.11, and that the application of this sum to the undue note was made on May 11, 1923, and the check protested for insufficient funds on May 11, 1923.

Defendant invokes the rule laid down by this court in Magnolia Petroleum Co. v. Saylor, 72 Okla. 282, 180 Pac. 861, involving the alteration of an oil lease, and in Nelson v. Jones, 93 Okla. 85, 219 Pac. 667, involving a horse trade, as follows:

"When one of two innocent persons must suffer by the acts of the third, the one who enables the third person to occasion the loss must sustain it, and what one induces another to regard as true is the truth between them if the other has been misled thereby."

In the last cited case Nelson traded for a stolen horse; he delivered his horse to the thief, who sold it to Jones and this court, in applying the rule, held Nelson could not recover the horse Jones had bought.

We do not question the correctness of the rule nor inveigh against it when applied to the facts in the cited cases, but it is not applicable to the facts in the instant case.

Here, the bank sustained no loss by the deposit of the money that was to pay off the mortgages. Its loss, if any, was occasioned by its own act of loaning the Collins Company $40,000, on collateral security of a face value of more than $71,000, upon which they failed to realize the full amount of the note, according to the testimony of the vice president of the bank, and the plaintiffs did not enable the defendant to sustain any loss or induce it to regard as true that which was untrue, or mislead the bank when it made

the loan to the Collins Investment Company. Under the great weight of authorities, if the bank had notice or knowledge of the method of business of the Collins Investment Company, and had more than sufficient funds to pay this check when presented, the bank would be liable, and the question of knowledge or notice being one of fact for the jury, the court erred in sustaining the defendant's demurrer to the plaintiffs' evidence, and the judgment of the court is therefore reversed and remanded, with directions to grant the plaintiffs a new trial.

By the Court: It is so ordered.

Note.—See under (1) 7 C. J. p. 655 §353; p. 658 §357; p. 660 §358. (2) 7 C. J. p. 658 §357; p. 670 §377; 3 R. C. L. Supp. 593; 1 R. C. L. Supp. p. 860; 4 R. C. L. Supp. p. 204; 5 R. C. L. Supp. p. 188. (3) 7 C. J. p. 657 §354. (4) 7 C. J. p. 670 §377; 38 Cyc. p. 1548.