## BOARD OF COM'RS OF McCURTAIN COUNTY v. STATE NAT. BANK OF IDABEL et al.

No. 21808.   Sept. 18, 1934.

Rehearing Denied Oct. 9, 1934.

L. E. Mifflin, Co. Atty., and Tom Finney, for plaintiff in error.

H. P. Hosey, for defendants in error.

PER CURIAM.   The amended petition filed in this action alleges that on the 24th day of November, 1924, the district court of McCurtain county entered judgment finding indebtedness of said county amounting to $66,000.   That funds arising from the funding bond issue came into the possession of one A. J. Waldock, and that Waldock deposited said money in the defendant bank to his credit as trustee.   That thereafter R. C. Oldham, as chairman of the board of county commissioners, and Mayo James, as county treasurer, having learned of said deposit, notified the bank of the character of said funds through its officers, D. B. Strawn, president, and Geo. T. Arnett, director, and that said officers agreed orally that the bank would hold said funds for the benefit of the county and not pay out said funds except to the county treasurer.   That thereafter the bank paid to Waldock $1,500 in cashier's checks, and paid him, by transferring from the trust account to his personal account, the sum of $11,219.16, and that these sums, amounting to $12,719.16, were appropriated by Waldock to his own use, and that the bank had full knowledge of said misappropriations, and asks judgment against the bank for that amount with interest.

The answer denies generally the allegations of the petition, except certain admissions.   It admits the issuance of the funding bonds and that the funds derived from the sale of the bonds came into the hands of Waldock, and that he deposited same in the defendant bank to his credit as trustee, and admits that defendant knew the same were funds obtained from the sale of the funding bonds, but alleges that such facts were also known to the county treasurer of McCurtain county, and that said funds were delivered to the said Waldock with the full knowledge of the plaintiff and said county treasurer, to be paid out to the judgment creditors.   The answer further denies that there was any agreement between the president, D. B. Strawn, or its director, Geo. T. Arnett, with R. C. Oldham, chairman of the board of county commissioners, that the bank would hold said funds for the benefit of the county and other creditors and would not pay out same except to the county treasurer; and asserts that such an agreement, even if made, would be ultra vires and void.   That the officials of the bank advised the chairman of the board of county commissioners and the county treasurer to bring an action against the bank to prevent the payment of the funds on the order of Waldock, or that the bank would be obliged to pay out on proper order of Waldock as such trustee, and that the said county officials failed and refused to institute such action.   That at the time the funds were paid out the defendant had no knowledge of an intention of Waldock to misappropriate any of said funds.

The reply denies all material allegations of the answer.

On insolvency of the bank, W. C. Jamison

was named as receiver, and he has been made a party defendant in error.

The testimony of witnesses shows that the moneys derived from the funding bonds sold were deposited in the defendant bank by A. J. Waldock in his name as trustee, and that at once bank officials and the county officials mentioned conferred and that all parties concerned knew of the deposit. The bank requested the county attorney to institute some proper action to hold up any disposition of the fund, if the county intended to object to payments being made on Waldock's check as trustee. This the county attorney did not do, asserting that he would rely on the treasurer's bond in case of any loss to the county. It was about 30 days after the deposit of the funds before any checks were issued by Waldock, but he proceeded with reasonable dispatch to pay some of the creditors, finally drawing on the account for the amount of $12,719.16, and appropriating such sum to some unauthorized purpose. He represented to the bank that the amount so drawn was to be applied on the payment of claims embraced in the funding bond issue.

At the close of the evidence of the plaintiff, the court, on proper motion, directed a verdict for the defendant. Numerous errors are assigned, but are discussed under one proposition, viz.:

"That, as a matter of law, an agent's or trustee's bank of deposit is put on notice by and acts at its peril if it receives without investigation, a check drawn by the agent or trustee on his principal's or beneficiary's funds to his own order and tendered for credit of his own private account."

This proposition may be correct under circumstances or conditions tending to show a bank was negligent in paying out funds on the check of one as a fiduciary—an agent or trustee—without making investigation. Certainly, if a bank, without making investigation, pays a check drawn by an agent on the funds of his principal, payable to himself as an individual, it might be guilty of such negligence as to be charged with responsibility, in case of a misappropriation of the funds. But the question of fixing liability is one of knowledge, and it is true such knowledge or notice may become a question of law. The rule followed in this state seems to be that the bank must have knowledge that the deposit is a trust deposit, and that when it is drawn out by the trustee he intends to misappropriate it, and unless these

facts are established by the evidence, then a court would not be warranted in assessing any liability against the bank.

There were many circumstances connected with the funding bonds and the handling of the proceeds derived from their sale that present an unusual condition. Why these funds came into the hands of Waldock and why he was permitted to stand in the place of legally constituted authorities in paying out these funds and to proceed in the entire enterprise without furnishing bond for his faithful performance, tends to show a lack of diligence on the part of responsible officers.

Every person connected with the transaction who owed a duty to the public knew that the proceeds of the sale of the bonds had come into the hands of A. J. Waldock, and that he had deposited the money in the bank in his name as trustee, and that from time to time he was issuing checks as trustee on the account to pay judgments and warrants covered in the funding bond. It appears that the treasurer had made demand on Waldock and on the bank to pay over the proceeds of the funding bonds to him as county treasurer, but the bank, for its protection, asked that proper legal proceedings be instituted to authorize the bank to make proper payment of the funds. From time to time there was discussion between the county officers concerned and officials of the bank with reference to the funds, indicating that there was considerable suspicion as to the proper handling of the moneys by Waldock. But no proceeding was ever filed to obtain any order of the court with reference to the handling of the funds through the bank.

So far as the record discloses, the bank acted in good faith in this matter and paid out the funds on the proper checks of the said Waldock as trustee. At the last Waldock drew the balance remaining in the account and had it transferred to his individual account, and disposed of that portion of the funds for purposes not beneficial to the trust. The bank never received any benefit from his transactions, and the evidence fails to show that the bank had notice or knowledge of an intent on the part of Waldock to convert the funds to his own use.

Under the evidence in this case, the proposition of the plaintiff in error cannot be adopted. The funds in the defendant bank were trust funds and were so known to be by all parties concerned in the transaction,

and the final withdrawal of the funds was on the check of the trustee, payable to himself as an individual; but it does not appear that the bank was negligent, but it does appear that full opportunity was given to the proper officials to assert any right or claim to the custody of the funds which they might have had under the law. Under such a situation, the bank was required to pay out the moneys on the proper order of Waldock as trustee.

In the case of New Amsterdam Casualty Co. v. Robertson et al. (Ore.) 278 P. 963, the court said:

"Bank permitting clerk of school district to transfer school funds to his individual credit and account, where it acted in good faith, did not thereby become liable for conversion by virtue of the clerk's subsequent appropriation of funds to his own use and benefit, though account was opened in name of the school district and clerk, and checks drawn on account by clerk were not countersigned, since form of checks and manner in which account was handled did not constitute notice of misappropriation."

In the case of Dempsey Oil & Gas Co. v. Citizens National Bank, 110 Okla. 39, 235 P. 1104, this court, in considering the question of a bank deposit, in the second paragraph of the syllabus, says:

"A bank deposit without any limitations, restrictions or qualifications, such as are usually made in the due course of business, subject to be drawn out by the depositor on demand, is a 'general deposit,' and creates the legal relation of debtor and creditor between the bank and depositor: in legal effect, the deposit is a loan to the bank. This is equally so whether the deposit is of trust moneys or funds which are impressed with no trust, provided the act of depositing is no misappropriation of the fund. The bank simply becomes indebted to the depositor in his fiduciary capacity."

And in the case of Interstate Nat. Bank v. Claxton (Tex.) reported in 80 S. W. 604, we have this as the rule:

"A depositor, though holding money in a fiduciary capacity, may draw it out of the bank at his pleasure, and the bank is bound to honor his checks, and incurs no liability in so doing so long as it does not participate in any misappropriation of funds or breach of trust, though the conduct or course of dealing of the depositor may charge the bank with notice that he is violating his trust."

This is quoted by this court in the case of New Amsterdam Casualty Co. v. First National Bank, reported in 144 Okla. 180, 289 P. 749, and in the same case this court

quotes, with apparent approval, from the case of Bischoff v. Yorkville Bank, 218 N. Y. 106, 112 N. E. 759:

" 'Although the depositor is drawing checks which the bank may surmise or suspect are for his personal benefit, it is bound to presume, in the absence of adequate notice to the contrary, that they are properly and lawfully drawn. Adequate notice may come from circumstances which reasonably support the sole inference that a misappropriation is intended, as well as directly'."

There was a failure to show that the bank had notice of an intention of the trustee to misappropriate the funds of McCurtain county, and there was a failure to show by the evidence that the bank benefited in any particular by the transactions complained of by the plaintiff in error, and since it is necessary, to place liability on the bank, to show, not only that the fund in the bank was a trust fund, but also that Waldock intended to appropriate it to his own use and benefit and that the bank was charged with notice of his wrongful intention, the trial court did not err in directing the jury to return a verdict for the defendant.

For the reasons herein, the judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of District Judge E. L. Mitchell, who assisted in the preparation of this opinion. The District Judge's analysis of law and facts was assigned to a Justice of this court for examination and report. Thereafter the opinion, as modified, was adopted by the court.