Bill INGRAM, Appellee and Counter-Appellant,

v.

The LIBERTY NATIONAL BANK AND TRUST COMPANY OF OKLAHOMA CITY, Appellant and Counter-Appellee.

No. 47482.

Supreme Court of Oklahoma.

March 25, 1975.

Ross, Holtzendorff & Bond by Jay R. Bond, Oklahoma City, for appellee and counter-appellant Bill Ingram.

James A. Jennings, Oklahoma City, for appellant and counter-appellee Liberty Nat. Bank and Trust Co.

DAVISON, Justice:

The undisputed facts in this matter are, that prior to June 4, 1971, Bill Ingram (Ingram) was indebted to The Liberty National Bank and Trust Company of Oklahoma City (Liberty National); that on June 4, 1971, Ingram filed a voluntary petition in bankruptcy, listing Liberty National as one of his creditors, and was duly discharged in bankruptcy; that subsequent to such discharge Liberty National became indebted to Ingram by reason of Ingram depositing funds with Liberty National in a checking account; and that later Liberty National set off the old indebtedness of Ingram against the bank account to the extent of $865.00.

Ingram made demand upon Liberty National for payment of the funds deposited

and, failing to receive payment, instituted this action to recover the $865.00 with interest, and for attorney fees and costs. The trial court rendered judgment for Ingram against Liberty National for $865.00, and interest, but denied Ingram any recovery for attorney fees.

Liberty National has appealed from the judgment rendered against it. Ingram has appealed from that part of the judgment refusing to allow recovery of an attorney fee.

█ Liberty National contends that Ingram's discharge in bankruptcy did not affect Liberty National's "common-law right of set-off as codified by the banker's lien statute," 42 O.S.1971, § 32, which provides as follows:

"A banker has a general lien, dependent on possession, upon all property in his hands belonging to a customer, for the balance due to him from such customer in the course of the business."

The statute uses the term "lien." This is not an accurate description of the right given a bank to apply deposits of its customer to the payment of a debt due it by the depositor. The money deposited is no longer the property of the depositor, but becomes the property of the bank, and the bank becomes debtor to the depositor. This right of a bank is more accurately a right of set-off for it rests upon, and is co-extensive with, the right to set-off as to mutual demands. Kasparek v. Liberty Nat. Bank, 170 Okl. 207, 39 P.2d 127.

This brings us to the meaning and effect of a discharge in bankruptcy in the present situation.

Title 11 U.S.C.A. § 1(15) Bankruptcy states:

" 'Discharge' shall mean the release of a bankrupt from all of his debts which are provable in bankruptcy, except such as are excepted by this title; * * *."

There is no contention that the indebtedness of Ingram to Liberty National falls within any exception set forth in the bankruptcy law.

█ █ A discharge in bankruptcy is neither a payment nor an extinguishment of a debt. It is a complete and valid defense to the enforcement of the debt as a personal obligation, provided it is properly pleaded. A debt remains in existence after discharge in bankruptcy, although divested of its character as a personal obligation which is legally enforceable. 9 Am.Jur.2d Bankruptcy, § 750. Haddock v. First National Bank and Trust Company, Okl., 304 P.2d 1053, 1055.

In the present situation Liberty National is attempting to set off mutual demands, as distinguished from enforcement of a lien. Kasparek, supra. This necessarily means that Liberty National is attempting to enforce Ingram's discharged debt as a personal obligation of Ingram.

In Zollinger v. First Nat. Bank of Oklahoma City, 126 Okl. 182, 259 P. 141, we held that the right of a bank to exercise its statutory banker's "lien" in the application of funds held by the bank to the payment of indebtedness owing by a depositor presupposes: (a) that the fund deposited in the bank by the debtor was the property of the latter; (b) that the fund was deposited without restrictions and was not a special fund, and (c) an existing indebtedness "then due and owing by the depositor to the bank."

█ The term "then due", when applied to a debt, means the date on which payment may be required. Bank of America Nat. Trust & Savings Ass'n v. Gillett, 36 Cal.App.2d 453, 97 P.2d 875. The word "owing" naturally implies a "legal obligation" and has been construed to mean "absolutely and unconditionally bound to pay." 67 C.J.S. Owing, pp. 546, 547.

In 8B C.J.S. Bankruptcy § 559, pp. 23, 24, it is stated as follows:

"A debt existing against the bankrupt prior to the filing of the petition in bankruptcy and which has been discharged cannot be set off against an indebtedness which defendant has contracted to the bankrupt subsequent to the filing of the petition, unless the bankrupt

fails to insist on it in a proper manner as a bar thereto. * * *."

Cited in support of the above statement is Bramham v. Lanier Bros., 138 Tenn. 702, 200 S.W. 830. In that case, Lanier sought to set off Bramham's pre-bankruptcy debt against his (Lanier's) debt to Bramham that arose subsequent to Bramham's bankruptcy proceeding. The issue of Lanier's right to do this arose in a suit brought by Bramham after the latter's discharge in bankruptcy. The court held: that Lanier had no right of set-off, stating that after the date of the filing of the petition in bankruptcy the earnings, profits, or transactions of the bankrupt that subsequently arise are parts of his "new estate;" that in order to have a set-off mutuality is necessary; and in order to have mutuality the debts or credits must exist at the date of filing the petition in bankruptcy. The decision held that there was wanting the essential element of mutuality to support the set-off urged by Lanier.

In the Bramham case the court relies on In Re Michaelis (D.C.) 196 F. 718, in which the court held, relative to the effect of the petition in bankruptcy, "* * * the mutual account between these bankrupts and their bank of deposit was closed by operation of law the moment the petition was filed, and any money thereafter intrusted by the bankrupts to the bank was like a deposit with another person and not subject to any set-off existing before petition."

Liberty National relies on Aiken v. Bank of Georgia, 101 Ga.App. 200, 113 S.E.2d 405, in which the bank reduced the note debt of Aiken to judgment. Aiken then filed voluntary petition in bankruptcy proceedings and bank had notice that notes were scheduled as debts. After Aiken had been discharged in bankruptcy and had later opened an account with the bank, the bank withdrew (set-off) from the account the amount due on the judgment. Aiken then sued the bank in tort for damages because of the alleged illegal act of the bank in dishonoring his checks. The decision holds that, since Aiken did not avail himself of his right to go into the court where the judgment was rendered against him and get an order staying collection, he had not properly acted to interpose his discharge in bankruptcy against the bank acting to collect the judgment debt. The decision does suggest that the effect of the discharge could enter into any suit Aiken brought to recover the funds withdrawn by the bank. We doubt the correctness of the conclusion reached in the Aiken case, and in fact there is a strong dissenting opinion. In any event, the decision is not in point in the present case, because no judgment was secured by Liberty National, and Ingram has directly raised the issue of the effect of his discharge in bankruptcy in his action to recover his deposit.

Liberty National also cites Leach v. Armstrong, 236 Mo.App. 382, 156 S.W.2d 959, in which a son (Leach) had borrowed $1800 from his father and then took the benefit of the bankruptcy law listing this debt, and had later been discharged in bankruptcy. The father died leaving an estate, of which a small tract of land was a part, and the son filed a partition suit, as owner of a one-fourth interest by inheritance, asking that the property be sold. The other heirs invoked the doctrine of "equitable retainer," and alleged that the amount of the son's indebtedness (discharged in bankruptcy) was greater than the interest the son would receive by inheritance from his father's estate, and asked that the action be dismissed. (The doctrine of equitable retainer is based upon the principle that he who seeks equity must do equity.) The appellate court sustained this plea, saying the son has had the beneficence of the bankruptcy laws (11 U.S.C.A. § 1 et seq.) and, by barring his co-heirs of the beneficence of the law of equitable retainer thereby, in effect, converts the debt, the liability for which "has been exterminated, into an asset which augments his purchasing power of *inheritance* to the diminution of the purchasing power of *inheritance* of his co-heirs." (Emphasis ours)

Liberty National contends the Leach case is authority that the bankrupt's debt survives to be raised as a set-off against the claim (deposit) of a bankrupt. We will dispose of this contention in connection with our discussion of the following case also cited by Liberty National.

In Kaufman's of Kentucky v. Wall (Ky. App.), 383 S.W.2d 907, the plaintiff Wall was injured in the defendant Kaufman's store and, when her claim was rejected, she ran up an account of $1157.01 with defendant, and filed suit for damages for her injuries. Later plaintiff filed a petition in bankruptcy listing her cause of action as an asset, and the debt she owed defendant Kaufman's as a liability. She was permitted to prosecute her action in her own name following her discharge. The defendant by appropriate pleading sought to set off the amount of the indebtedness the plaintiff had incurred against any recovery plaintiff might receive. Plaintiff obtained a verdict for $2000. The trial court held the defendant was not entitled to any credit on the judgment. The appellate court reversed and allowed defendant to set off the account indebtedness against the judgment for personal injuries. The court relies entirely upon what it calls the "rationale of the cases which permit a debt to be used as a set-off, even though no affirmative recovery could be had," as "stated" in the Leach case, supra, but fails to mention that the Leach case involved an "inheritance" by a bankrupt heir, and that "equitable retainer" was the basis of the Leach decision.

The Kaufman's case also cites In re Morgan's Estate, 226 Iowa 68, 283 N.W. 267, to support the set-off therein permitted. Here again, the controlling principle, in the Morgan's decision, was the "right of retainer," and quoting from authority therein cited, "It is not the technical right of set-off in actions at law."

We do not regard either the Leach case or the Kaufman's case as authority supporting Liberty National's claim of a right to exercise set-off.

In the Leach case the circumstances present a situation for which the courts have precedents for applying equitable principles. The controlling facts in the Leach case raise the issue of the application of equitable retainer between heirs to an estate, and do not raise the issue of the right to set-off between parties to commercial transactions as in the present matter.

In the Kaufman's case the circumstances did raise the issue of the right to set-off and the court did authorize set-off. However, in reaching this conclusion, the court relied upon decisions involving situations calling for the application of equitable principles.

■ In view of the authorities set forth above, clearly contrary to Liberty National's contentions, we conclude that the lower court was correct in denying Liberty National's claimed right of set-off, and granting Ingram recovery of his deposit and costs.

As stated above, the lower court denied Ingram's prayer for an attorney fee. The denial was on the ground that this was not within the class of cases in which an attorney fee may be recovered. Ingram urges this was error.

His claim to an attorney fee is based on 12 O.S.1971, § 936, which states:

"In any civil action to recover on an open account, a statement of account, account stated, note, bill, negotiable instrument, or contract relating to the purchase or sale of. goods, wares, or merchandise, or for labor or services, unless otherwise provided by law or the contract which is the subject to the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs."

In Globe & Republic Ins. Co. v. Independent Trucking Co., Okl., 387 P.2d 644, we

said that the right to recover attorney's fees from one's opponent in litigation as a part of the costs thereof did not exist at common law, and that such allowances, in the absence of statute or some agreement expressly authorizing the same, cannot be sustained.

The above statute does not expressly authorize an attorney fee in a suit to collect a bank deposit. We are not furnished with any decision construing language like that in the above statute to authorize payment of an attorney fee in such a situation.

When a bank deposit is made without limitations or qualifications, as are usually made in due course of business, subject to being drawn out on demand, the deposit is a "general deposit," and is in legal effect a loan to the bank, and the legal relation between the bank and the depositor is that of debtor and creditor. Board of County Commissioners v. State Nat. Bank of Idabel, 169 Okl. 182, 36 P.2d 281, 284.

The contract entered into when the depositor opens a general checking account at a bank is generally implied, and the depositor delivers his funds to the bank in return for which the bank assumes the obligation to pay out on his demand or order a sum equal to the deposit balance. Brown v. Eastman National Bank of Newkirk, Okl., 291 P.2d 828, 830.

Under the above statements the agreement between the depositor and bank is that the bank will accept the depositor's money and keep it safe unitl the depositor demands it or orders it paid to others. It is our conclusion that this is not an "open account" within the meaning of that term, as used in the above statute.

The trial court did not err in denying plaintiff Ingram an attorney fee.

Affirmed.

WILLIAMS, C. J., and IRWIN, BERRY, LAVENDER, BARNES, SIMMS and DOOLIN, JJ., concur.