## CLARKE BROTHERS v. WOLFE.

1. The evidence in the present case demanded a finding in favor of the plaintiff so far as the title to the property involved was concerned, and the court did not err in so directing the jury.
2. None of the grounds of the motion for a new trial complain of errors which were of such a character as to require the granting of a new trial, except the one which assigns error upon the instruction of the judge which submitted to the jury the question whether the plaintiff was entitled to recover attorneys' fees as part of the damages. There was no evidence authorizing such an instruction. If the plaintiff will write off from the verdict the amount of the attorneys' fees claimed in the petition, within ten days after the remittitur is filed in the office of the clerk of the court below, the judgment will be affirmed, with direction that the costs in this court and all costs that have accrued in the court below since the filing of the motion for a new trial be taxed against the defendant in error; otherwise the judgment will be reversed.

Submitted March 1, — Decided April 25, 1902.

Trover.    Before Judge Seabrook.    McIntosh superior court. January 12, 1901.

*Charlton & Charlton*, for plaintiffs in error.
*E. D. Graham*, contra.

COBB, J.   Wolfe brought an action of trover against Clarke Brothers, to recover a raft of timber.   It was alleged that the defendants had been stubbornly litigious and had acted in bad faith, causing the plaintiff to lay out the sum of $75 in the employment of counsel, which amount was sued for in addition to the raft of timber.   The judge instructed the jury that the plaintiff was entitled to recover, and left to their determination only the question of what should be the amount of damages and the attorneys' fees to be allowed.   The jury returned a verdict for the plaintiff for $391.75.   The defendants assign error upon the refusal of the court to grant them a new trial.

1. After a careful reading of the brief of evidence, we have reached the conclusion that the court did not err in instructing the jury that the plaintiff was entitled to recover.   Both the plaintiff and the defendants claimed title to the timber under one Peter Clifton.   Clifton had a timber lease to certain land from the Southern Pine Company, and entered into a contract with Clarke Brothers, of which the following is a copy : "Darien, Georgia, 15th January, 1897.   It is this day mutually agreed between Clarke Broth-

ers, of Darien, Georgia, of the first part, and Peter Clifton, of Tatt-
nall county, Georgia, of the second part, as follows : Party of the
second part agrees to deliver to the party of the first part at their
boom in or near Darien, Georgia, as directed, all of the timber and
lumber he may cut, may have cut (from the present date) from the
lands purchased or to be purchased from the Southern Pine Com-
pany of Georgia, said lands being in Montgomery county, Georgia.
The foregoing to be square edge, well manufactured, fresh, of good
quality, showing good heart on four sides, saw butted both ends,
true, etc. Free from all defects. All to be of long-leaf pine. For
the above same timber the party of the first part agrees to pay nine
dollars for a four hundred and twenty foot average and a propor-
tionate price for all below a 420 ft. average, and one cent for each
additional foot average above a 420 ft. average, up to the first day
of July, 1897, and after that date price to be contract market price
in Darien market. [Signed] Peter Clifton." The defendants had
made advances to Clifton from time to time, and Clifton had de-
livered them timber cut from the land referred to in the contract.
Clifton ceased to operate his sawmill, and the plaintiff, who had
been an employee of Clifton, made an arrangement with him by
which he was to operate the sawmill in his own behalf. The raft
of timber in dispute was cut and sawed while the plaintiff was op-
erating the mill. When it reached Darien, it was seized by the
defendants, who claimed it under the contract above referred to.
The plaintiff, under an arrangement made with Clifton, acquired
title to the raft of timber in question, unless, prior to the time the
arrangement was entered into, title thereto had vested in Clarke
Brothers, under the contract above set forth.

Was the contract between Clarke Brothers and Clifton of such
a character that title to the timber and lumber to be cut therefrom
vested in Clarke Brothers immediately upon the execution of the
contract; that is, were Clarke Brothers the owners of the timber
and lumber from the date of that contract, and was Clifton their
mere agent and representative to cut and saw the same for their
benefit? We do not think that the instrument can be properly
construed to be a contract of sale under which the timber and lum-
ber became at once the property of Clarke Brothers. The agree-
ment contained in the paper is rather an executory contract for the
sale of the timber and lumber, and title to the same would not pass

to Clarke Brothers until the timber had been cut and sawed and delivered to them.   See, in this connection, *Russell* v. *Abbott*, 91 *Ga.* 178.   That being the case, a sale by Clifton of any portion of the timber or lumber before it was actually delivered to Clarke Brothers would have the effect to pass the title to the purchaser and defeat any claim which Clarke Brothers might have upon the specific timber or lumber thus sold.   In such a case they would be remitted to their action against Clifton for damages for the breach of his contract.   Clarke Brothers had no title, under the contract, to any timber or lumber which had not been actually delivered to them.   Their right to claim any portion of the timber cut or lumber sawed would not prevail against one who, under a valid contract with Clifton, had cut the timber and sawed the same into lumber under an arrangement by which such person was to become, upon the performance of certain conditions, the owner of the lumber so sawed; and this would be true notwithstanding such person, at the time that he entered into the contract with Clifton which was to result in a transfer of the ownership of the lumber, had full knowledge of the existence of the contract between Clifton and Clarke Brothers.   One who buys property from another does not fail to obtain title to the property purchased merely because he had notice that the seller was under a contract to sell such property to another, when there is nothing in the contract between the seller and the other which would have the effect to vest the title to the property, or which would authorize the purchaser to apply to a court of equity for a specific performance of the contract. Although Clifton may have acted in bad faith with Clarke Brothers, and have rendered himself liable to an action for damages to them for a breach of his contract, this did not defeat the title of Wolfe, though he may have been fully cognizant of Clifton's bad faith and breach of contract.   Under the evidence in the present case, the title to the raft of timber in dispute was in the plaintiff as against Clarke Brothers, and the court did not err in so instructing the jury.

2.  The motion for a new trial contains numerous grounds, but none of them, except one which will be hereafter referred to, set forth any error which in our opinion would require the grant of a new trial.   Those grounds which complain of the admission of evidence fail to set forth the evidence in such a manner that the as-

signments of error can be dealt with; those which complain of the portions of the charge of the court relating to the right of the plaintiff to recover were, when applied to the facts of the case, free from error; and there was no error in any of the refusals to charge.

The court instructed the jury that they were to determine from the evidence whether the plaintiff was to recover attorneys' fees as a part of his damages. This instruction, we think, was error, for the reason that under no view of the evidence was there authority for a finding that the defendants had acted in bad faith or had been stubbornly litigious. We can not tell with certainty whether the jury allowed any amount as attorneys' fees, as the evidence with reference to the value of the timber ranged from something less than $300 to an amount largely in excess of the verdict returned. If the jury found the least amount that the evidence authorized, with interest from the time of the conversion, the damages would be less than the amount of the verdict rendered, and it would therefore seem that the jury had allowed at least something for attorney's fees, if they took that view of the question of damages. On the other hand, if the jury fixed the value of the raft of timber at the sum authorized by a portion of the testimony, the verdict was for a sum less than the value of the timber itself, independently of the matter of the expenses of the litigation. We can not, therefore, state with certainty whether the error of the judge in leaving to the jury the question of damages was prejudicial. The presumption is that it was, and a new trial would necessarily result from such an error. If, however, the plaintiff will write off from the verdict the sum of $75, which was the full amount claimed in the petition as attorneys' fees, the judgment will be affirmed, with direction that the verdict and judgment be so amended as to be for the amount rendered, less $75, and that the costs in this court, as well as all costs in the court below which have accrued since the motion for a new trial was filed, be taxed against the defendant in error. If, on the other hand, the plaintiff refuses to write off the amount referred to, the judgment will be reversed.

*Judgment affirmed conditionally, with direction. All the Justices concurring, except Lewis, J., absent.*