**HERTZEL v. WEBER.**

No. 16403—Opinion Filed April 6, 1926.

Rehearing Denied May 25, 1926.

**Damages—Attorney's Fees Paid in Defending Suit Brought in Violation of Injunction.**

Attorney's fees paid in defending a suit in the federal court, brought and maintained in violation of an injunction of the state court, are not recoverable, as such, in a suit for damages for violation of the injunction.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Washington County; H. C. Farrell, Judge.

Action by Howard Weber against Freeman E. Hertzel. Judgment for plaintiff, and defendant appeals. Reversed.

Ames, Lowe, Richardson & Cochran, and B. B. Foster, for plaintiff in error.

John J. Shea and Thos. F. Shea, for defendant in error.

Opinion by RAY, C. The facts necessary to a decision of the case may be summarized as follows: Prior to statehood the Vinita & Chelsea Oil Company and Oliver Bagby acquired oil and gas leases, approved by the Secretary of the Interior, on what was known as the Moore & Mode allotments. The lessees entered into a drilling contract with Howard Weber, plaintiff in this case, by which Weber agreed to develop and operate the leases and pay to the lessees a 25 per cent. royalty, Weber to have the remaining 75 per cent. of the oil and gas for the development. Weber then entered into an agreement with Freeman Hertzel, defendant, and T. D. Barnsdall, by which Hertzel and Barnsdall were to acquire an interest in the drilling contracts by the advancement of certain moneys. The money not having been paid to Weber according to contract, he notified Hertzel and Barnsdall that the contract was abrogated. A large amount of money having accrued in the hands of the lessee, Bagby, which was being claimed by each of the three parties, Weber, Hertzel and Barnsdall, he, Bagby, commenced suit in the Western District of the Indian Territory to determine the ownership of the funds. Weber, Hertzel, and Barnsdall filed their respective answers, each claiming ownership of the funds in Bagby's hands. Statehood intervened and the case was transferred to the district court of Washington county, where the case was tried. The court made findings of fact and conclusions of law, on which Weber was decreed to be the sole owner of the funds, and of the drilling contracts from which the funds were derived. Hertzel and Barnsdall. and each of them, and all persons acting for them or either of them. as agents or otherwise, were "perpetually and finally restrained and enjoined from taking possession of or interfering with (or attempting so to do) the said drilling contracts or assignments of said leases or rights or of the rights or privileges appertaining thereto. or of the lands covered thereby or any part thereof, or of the oil and gas wells. fixtures and equipage thereon belonging, in whole or in part," etc.

Hertzel appealed to the Supreme Court of this state, and the judgment was affirmed. Hertzel v. Weber, 31 Okla. 5, 120 Pac. 589. Prior to the trial of that case in the district court of Washington county, Hertzel acquired the fee to the two allotments. After the case was affirmed by this court, Hertzel filed an action in ejectment against Weber in the federal court of the Eastern District of Oklahoma in which he alleged that he was the owner of the fee of the two allotments involved and that the drilling contracts which the state court had held Weber to be the owner of were void for the reason that the written consent of the Secretary of the Interior and the lessors had not been obtained for their execution. Weber then filed a bill in equity in the United States District Court in the Eastern District of Oklahoma to enjoin Hertzel from prosecuting his ejectment action. A demurrer to the bill was sustained upon the ground that all the matters and things alleged in Weber's petition, as basis for the injunction sought might be pleaded in defense of the law action. That decision was affirmed by the Circuit Court of Appeals of the Eighth Circuit (230 Fed. 965) upon the same ground, that is, that all the matters relied upon in the bill for the injunction were equally available at law or in equity. Thereafter the suit in ejectment brought by Hertzel against Weber proceeded to trial and judgment was for the defendant, Weber, and against the plaintiff, Hertzel. Upon appeal by Hertzel to the Circuit Court of Appeals of the Eighth Circuit, the judgment of the trial court was affirmed. Thereafter Weber brought this action in the district court of Washington county to recover damages alleged to have been sustained by him by reason of Hertzel's violation of the injunction contained in the decree of the state court. He alleged that the prosecution of the ejectment suit in the federal court was in violation of the injunctive decree of the state court, and by reason thereof Weber was put to the expense of defending unwarranted litigation which had been expressly forbidden and prohibited by the injunction. The items of damages claimed were necessary attorney's fees and expenses paid by him in defense of the forbidden litigation and in defense of the title which had already been quited in him. Judgment was for plaintiff, and the defendant Hertzel has appealed.

Assuming, but not so deciding, that the ejectment suit commenced and prosecuted in the federal court by Hertzel against Weber was in violation of the injunction of the state court, we have first for decision the question, Is the plaintiff, Weber, entitled to recover from the defendant, Hertzel, as damages, the attorney's fees necessarily incurred and paid by him in defending the ejectment action?

The general rule is as stated in 17 C. J. p. 807, sec. 133:

"Apart from the sums allowable and taxed as costs, there can, as a general rule, be no recovery as damages of the costs and expenses of litigation, or expenditures for counsel fees."

Section 5976, C. S. 1921, provides that for the breach of an obligation arising from contract the measure of damages, except where otherwise expressly provided, is the amount which will compensate the party aggrieved for all detriment proximately caused thereby or which in the ordinary course of things would likely result therefrom.

In an action for breach of a written contract plaintiff is not entitled to recover attorney's fees, as such are too remote. Trustees of Horton's Estate v. Sherwin, 63 Okla. 259, 164 Pac. 469.

Section 5996, C. S. 1921, provides that for the breach of an obligation not arising from contract the measure of damages, except where otherwise expressly provided. is the amount which will compensate for all detriment proximately caused thereby, whether it could have been anticipated or not.

It will be observed that the measure of damages for breach of an obligation not arising from contract is defined in the same language as that for breach of an obligation arising from contract, that is, the amount which will compensate for all detriment proximately caused thereby, with this distinction. that for breach of an obligation arising from contract it is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which in the ordinary course of things would be likely to result therefrom, while, for the breach of an obligation not arising from contract, the measure of damages is the amount which would compensate for all detriment proximately caused thereby, whether it could have been anticipated or not. There appears to be no distinction in the language of the two sections which would justify the court in saying that in the one case attorneys' fees cannot be recovered, upon the ground that they are too remote, and then say that attorneys' fees can be recovered, as damages, under the other section.

In the case of Frantz v. Saylor, 12 Okla.

39. 69 Pac. 794, this court followed and approved Oelrichs v. Spain, 15 Wall. (U. S.) 211, and held that attorneys' fees are not a proper element of damages to be proved in an action on an injunction undertaking.

In Oelrichs v. Spain, supra, the reason for denying attorneys' fees in such case was stated in this language:

"* * * In debt, covenant and assumpsit damages are recovered, but counsel fees are never included. So in equity cases, where there is no injunction bond, only the taxable costs are allowed to the complainants. The same rule is applied to the defendant, however unjust the litigation on the other side, and however large the *expensa litis* to which he may have been subjected. The parties in this respect are upon a footing of equality. There is no fixed standard by which the *honorarium* can be measured. Some counsel demand much more than others. Some clients are willing to pay more than others. More counsel may be employed than are necessary. When both client and counsel know that the fees are to be paid by the other party there is danger of abuse. A reference to a master, or an issue to a jury, might be necessary to ascertain the proper amount, and this grafted litigation might possibly be more animated and protracted than that in the original cause. It would be an office of some delicacy on the part of the court to scale down the charges, as might sometime be necessary.

"We think the principle of disallowance rests on a solid foundation, and that the opposite rule is forbidden by the analogies of the law and sound public policy."

"In the absence of statute or specific contract, attorney's fees incurred by a party to litigation are not ordinarily recoverable either in an action on tort or on contract." Cleveland State Bank v. Lilley (Tex. Civ. App.) 260 S. W. 324.

The following cases are to the same effect: Alexander v. Walker (Tex. Civ. App.) 239 S. W. 309; Smith v. Smith (Tex. Civ. App.) 213 S. W. 273; Stapley Co. v. Rogers (Ariz.) 216 Pac. 1072; Dame v. Cochita Reduction & Improvement Co. (N. M.) 79 Pac. 296; A., T. & S. F. Ry. Co. v. Citizens Traction & Power Company (N. M.) 113 Pac. 813.

It is contended for Weber, however, that the rule adhered to in the above cited cases was abrogated by statutes of this state passed in 1905, providing that attorneys' fees could be recovered in actions on injunction bonds. The act referred to was an amendment to the then existing statute providing the conditions of the undertaking required to be given in injunction cases. Section 415, C. S. 1921, is the amended section. It provides that no injunction shall operate until the party undertaking the same shall give an undertaking to secure the party injured the damages he may sustain, including reasonable attorney's fees, if it be finally decided that the injunction ought not to have been granted. The purpose and effect of the amendment was to provide a reasonable attorney's fee for the defendant in an injunction suit where the injunction ought not to have been granted. But this is not a suit upon an injunction bond nor by a defendant against whom an injunction has been granted. This suit is by the plaintiff in an injunction suit against the defendant for a violation of the injunction. The two cases are not analogous.

To sustain the judgment the only authorities cited by counsel for Weber are the text in 17 C. J. 809, and cases there cited. That text is as follows:

"Where the natural and proximate consequence of a wrongful act has been to involve plaintiff in litigation with others, there may, as a general rule, be a recovery in damages against the author of such act of the reasonable expenses incurred in such litigation, together with compensation for attorney's fees."

The cited cases have been carefully considered, and it may be said that they sustain the quoted text, but the rule is not applicable here. It is not contended that Hertzel by any wrong ul act involved the plaintiff Weber in litigation with others. The litigation for which Weber seeks to recover attorney's fees was with Hertzel, and not with any third party. It may be said that there is no apparent distinction in principle and that the detriment suffered would be the same where the wrongful act resulted in litigation with the wrongdoer or with other parties, but here the wrongful act complained of is bringing and maintaining a suit against the plaintiff Weber. The only cases cited where it has been held that recovery could be had for attorney's fees as damages for wrongfully instituting and maintaining litigation are Clarke v. Wolfe, 115 Ga. 320, 41 S. E. 581, and Carhart v. Wainman, 114 Ga. 632, 88 Am. St. Rep. 45, and they arose upon a peculiar statute in the state of Georgia which provided:

"The expenses of litigation are not generally allowed as a part of the damages; but if the defendant has acted in bad faith, or has been stubbornly litigous, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them."

The only statute of this state dealing with the penalty for the violation of an injunction is section 413, C. S. 1921. It provides

that disobedience of an injunction may be punished as a contempt by requiring the offending party "to pay a fine not exceeding $200, for the use of the county, to make immediate restitution to the party injured, and give further security to obey the injunction; or, in default thereof, he may be committed to close custody until he shall fully comply with such requirements or be otherwise legally discharged."

It appears that it was the purpose of this statute to furnish to the plaintiff an adequate remedy against the defendant for the violation of an injunction. But it is contended by the plaintiff that, as this defendant is now, and at all times has been, a nonresident of the state, such remedy is not available, and, for that reason, he is entitled to the same relief as could be given in a proceeding for contempt if the defendant were in the jurisdiction of the court. He quotes from Scranton v. People's Coal Co. (Pa.) 117 Atl. 673: -

"A court would be weak indeed if a wrong-doer could willfully violate its decree and escape with less liability than if he had breached a contract or committed a tort."

The argument is strongly persuasive, but it may be observed that this action is remedial in its nature, for the benefit of the plaintiff, and not punitive in character to vindicate the authority of the court.

No authority is cited, and we know of none, for the maintenance of a civil action for damages as a violation of the court's authority. Some courts have held that in actions for malicious prosecution attorney's fees may be recovered, where shown to be reasonable and necessary, but in such cases express malice in the sense of intent to injure plaintiff is ordinarily an element of the cause or right of action. 38 C. J. 384. But here malice was neither alleged nor proved. It may also be said that some courts have held that the jury may, in fixing the amount of punitive damages, take into consideration plaintiff's expense in litigation as an element of punitive damages. 8 R. C. L. 153. But exemplary or punitive damages are allowed in this state only where the defendant has been guilty of oppression, fraud, or malice, actual or presumed. Section 5975. C. S. 1921.

We think the trial court erred in holding the attorney's fees paid in defending the ejectment suit in the Federal Court to be a proper element of damages. For the reasons stated, the judgment is reversed.

By the Court: It is so ordered.

Note.—See under (1) 17 C. J. p. 807 § 133.