SECURITY STATE BANK OF COMANCHE v. W. R. JOHNSTON & CO., Inc., et al.

No. 33986.  Feb. 20, 1951.

*228 P. 2d 169.*

Bond & Bond, Duncan, for plaintiff in error.

Jerome Sullivan, Duncan, for defendant in error W. R. Johnston & Co., Inc.

J. P. Speer, Duncan, for defendants in error J. P. Branch and Home Lumber Company.

GIBSON, J. The facts necessary to a decision of the case may be summarized as follows:

Home Lumber Company, a copartnership, composed of J. P. Branch and A. N. Harley, Jr., was the owner of real property described as lot eight (8), in block two (2) of Branch Subdivision of Wilson Addition to the town of Comanche, Oklahoma. In order to facilitate the handling thereof during the absence of Harley, who was in military service, the title thereto was held in the name of Branch. In September, 1946, Branch, by parol contract, sold the lot to N. E. Taylor for a consideration of $350 and agreed to convey the lot, by deed of general warranty, upon payment of the considera-tion. It was understood at the time that Taylor intended to erect a dwelling thereon and to undertake to sell same as improved property. On March 10, 1947, at which time the erection of the improvements was near completion, Taylor informed Branch that he had sold the premises to one James H. Hobson and requested that the deed to the premises be made to Hobson as grantee. Branch executed the deed accordingly and on that day deposited same as an escrow with Security National Bank of Comanche, Oklahoma, to be delivered upon the payment to said bank of said sum of $350, the purchase price, and the further sum of $4,214, owing said lumber company for materials theretofore furnished in the construction of the improvement. On March 15th following, said Taylor and Hobson executed in writing a contract for the sale of the premises at the price of $6,800, which was also deposited in said bank. Under the terms thereof the purchase was conditioned upon Hobson being able to secure a loan upon the premises. If so, the said deed and abstract showing merchantable title were to be delivered to Hobson upon payment to the bank of said $6,800. Hobson obtained from W. R. Johnston & Company, Inc., a loan in the amount of $6,300 and he, together with his wife, executed a mortgage upon the premises to secure the same. At that time, the period within which mechanics' or other liens could be filed had not expired. The loan company was well acquainted with Branch and believing that he by reason of his warranty of the title to the lot would be as interested as it, the company, was in protecting the property from such liens, made its check payable to Branch and transmitted same to him for disposition of the proceeds. On receipt thereof Branch withdrew said deed from the bank and got in touch with Taylor with a view of satisfying all claims, that could become liens, before delivery of said deed. At that time no liens had been filed but the following amounts were owing for which the

claimants were entitled to file liens: H. H. Thompson, $523.75; Cunningham and Coggins Hardware Company, $781.74; Stanley J. Box, $170.50, and said Home Lumber Company, the further sum of $70 for materials furnished since March 10th. It was agreed between Branch and Taylor that Branch by his endorsement should make the check payable to the order of the lumber company and that the latter should negotiate the same through said bank and on doing so have the bank credit the account of the Home Lumber Company with $4,564.04, representing the total of the amounts for which the deed was held as escrow, and pay the remainder thereof in cash to the lumber company who, in conjunction with Taylor, would with that sum and other moneys to be provided by Taylor, discharge said remaining indebtedness. A written memorandum of the plan was made. The plan was pursued and the lumber company through its bookkeeper presented the check and memorandum to said bank which accepted the same. By reason of the revenue stamps required the value of the check was reduced to $6,292.30. The bank placed to the credit of the lumber company $4,564.04, as requested, but declined to pay in cash the remainder thereof, $1,728.26. As reason therefor the president of the bank declared that removing the money in cash was an unbusinesslike way of handling an escrow and that the balance should be deposited to the credit of Taylor and by him checked on in making the payments. Upon being informed thereof Branch and Taylor, each acting on the belief that the bank was acting in good faith and that checks drawn by Taylor would be honored, agreed that the matter be so handled, and in pursuance thereof Taylor drew separate checks thereon payable to said named claimants, other than the lumber company, and delivered same in payment of their respective claims. All of said checks were dishonored by the bank when presented for payment by the payees. The bank treated the balance as a deposit to credit of Taylor and

applied same as a credit upon past due indebtedness of Taylor to the bank which was evidenced by his note. Branch and Taylor each remonstrated with the president of the bank against the dishonor of the checks and requested and demanded that the checks be honored or that said balance be made available to the lumber company, and at the same time advised him of the factual situation and that expensive litigation would necessarily ensue on default of compliance. The bank refused to alter the situation. Thereafter each of said claimants, other than the lumber company, perfected liens upon the property and filed actions for judgment and foreclosure of his lien, the action of H. H. Thompson being docketed as cause No. 14326, that of Cunningham and Coggins Hardware Company as No. 14327 and that of Stanley J. Box as No. 14328. The parties defendant and the questions at issue were the same in each case and they were consolidated for trial under No. 14326. The original parties defendant are J. P. Branch, N. E. Taylor, James H. Hobson and wife, Dora Mae Hobson, and W. R. Johnston & Company, Inc. On the issues joined between the plaintiffs and said defendants each plaintiff was awarded judgment for the amount of his claim with interest and for costs including attorney's fee in a fixed amount. It was further adjudged that each had a valid and subsisting lien against said premises which liens were co-equal and consolidated first liens, superior to any lien or interest claimed by defendants, and that the premises be sold to satisfy said judgments. The correctness of these judgments is not involved on the appeal. Upon motion of defendant W. R. Johnston & Company, Inc., said Security State Bank was made a party defendant in the cause and defendant to the cross-petition of said W. R. Johnston & Company, Inc., filed therein. In said cross-petition there was sought a judgment against said bank in the sum of $2,500 for damages sustained by reason of the wrongful act of the bank in misapplying said balance. And mentioned as items

of such damage was the sum of $300 expended for attorney's fee in defending against the actions of said plaintiffs and the sum of $125 for expenses incurred therein. Upon the issues joined the court awarded cross-petitioner judgment for the sum of $455, the aggregate of said attorney's fee and said expense item and $30, by it deposited as costs, and further judgment for so much of the amounts adjudged owing the plaintiffs as cross-petitioner may pay in protection of its mortgagee lien upon the premises. This judgment is challenged here. Upon its motion the Home Lumber Company was made a party defendant and thereafter it, joined by defendant Branch, filed a cross-petition against said bank. Upon the issues joined thereon the court awarded said Branch and Lumber Company judgment for $300 attorney's fee expended by them in defense of said actions and for $20 which was by it deposited as costs, and judgment for such amounts adjudged owing plaintiffs as they be required to pay. This judgment is also challenged.

The assignments of error are grouped under the proposition that the judgment of the court is against the clear weight of the evidence and contrary to law. Two grounds are urged in support thereof and they are applied in common to both of the judgments. The first ground is that under the facts the bank was liable to neither of the judgment creditors and the other that the damages awarded are contrary to law.

In support of the first ground it is contended that under the terms of the escrow, the bank was without authority to do otherwise than to deposit said balance to the credit of Taylor, and, when so deposited, the bank was entitled to apply same as a credit upon the indebtedness of Taylor to the bank. As authority there is cited 42 O. S. 1941 §32, which affords banks a lien upon property of a customer for the balance due it by the customer in the course of business, and First State Bank v. Hunt, 77 Okla. 4, 185 P. 1089, and other cases, which recognize the right of the bank in such cases to appropriate the customer's deposit to the satisfaction of his obligation to the bank, are relied on. The contention is without merit. The vice in the argument lies in the fact that the deposit was not and, under the facts, could not have become such a deposit as that contemplated by said law. A prerequisite to the existence of such right in the bank is that such deposit must give rise to a relation of debtor and creditor between the depositor and the bank. In the instant case the bank made the deposit without the knowledge or consent of Taylor and without authority of anyone acting by or on his behalf. In Gillette v. Liberty National Bank of Tulsa, 95 Okla. 76, 218 P. 1057, we held:

"The relation of debtor and creditor between the bank and the depositor is contractual, and no one can create this relation between the bank and depositor without authority from the depositor, express or implied, and, where a deposit is made in the bank by a third person to the credit of another without his knowledge or consent, and without authority, the relation of debtor and creditor does not exist."

Furthermore, the trial court properly found that in the hands of the Home Lumber Company the check evidenced a fund held in trust and that the bank was advised of such fact. Pertinent thereto we held, in Fidelity Nat. Bank of Oklahoma City v. Copeland, 138 Okla. 19, 280 P. 273:

"Where a trustee deposits money, belonging to his cestui que trust, in a bank and no credit is extended on account of such deposit and the bank in no way changes its position by reason thereof, a lack of notice of the trust character of such deposit is immaterial and the true owner may recover the amount thereof from such bank. Brady v. American Nat. Bank of Oklahoma City, 120 Okla. 159, 250 P. 1006."

The fact that the bank had knowledge of the trust character of the fund affords even greater reason for the application of the rule herein.

164

The second ground challenges the authority of the court to award damages for the two items, attorney's fees and expense, expended in defending against the actions of the plaintiffs. There is said in the brief: "We know of no Oklahoma authority allowing recovery of attorneys' fees in defending an action except under contract or where fixed by statute." As supporting the contention there are cited Hertzel v. Weber, 118 Okla. 82, 246 P. 839, and Prager's Paris Fashion et al. v. Seidenbach et al., 113 Okla. 271, 242 P. 260, and from the latter case a paragraph of the syllabus is quoted which is to the effect that a corporation, like an individual, cannot recover for time expended in matters pertaining to its own litigation. Herein the trial court properly found that it was by reason of the wrong of the bank that the plaintiffs filed their liens and instituted the actions which the cross-petitioners were required to defend in the protection of their rights. Such situation is not within the purview of the rule so declared. The rule invoked by the cross-petitioners and applied by the court is thus stated in 17 C. J. 809:

"Where the natural and proximate consequence of a wrongful act has been to involve plaintiff in litigation with others, there may as a general rule, be a recovery in damages against the author of such act of the reasonable expenses incurred in such litigation, together with compensation for attorney's fees. . . ."

The quoted rule was invoked in Hertzel v. Weber, supra. We there recognized the soundness of the rule but held the same inapplicable therein. In distinguishing the rule we said:

" . . . It is not contended that Hertzel by any wrongful act involved the plaintiff Weber in litigation with others. The litigation for which Weber seeks to recover attorney's fees was with Hertzel, and not with any third party. It may be said that there is no apparent distinction in principle and that the detriment suffered would be the same where the wrongful act resulted in litigation with the wrongdoer or with other parties, but here the wrongful act complained of is bringing and maintaining a suit against the plaintiff Weber."

We deem it clear that the facts bring the instant case within the quoted rule. In McGaw v. Acker, etc., Co., 111 Md. 153, 73 Atl. 731, 134 A.S.R. 592, there is the following clear statement of the general rule relied on and the qualification thereof which is applicable and controlling here:

"The general rule is that costs and expenses of litigation, other than the usual and ordinary court costs, are not recoverable in an action for damages, nor are such costs even recoverable in a subsequent action; but where the wrongful acts of the defendant have involved the plaintiff in litigation with others, or placed him in such relations with others as make it necessary to incur expense to protect his interest, such costs and expense should be treated as legal consequences of the original wrongful act."

The judgments are affirmed.