GARDNER TANENBAUM v. THE BENHAM COMPANIES
2022 OK CIV APP 23
514 P.3d 68
Case Number: 119396
Decided: 05/19/2022
Mandate Issued: 06/15/2022
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2022 OK CIV APP 23, 514 P.3d 68

 

GARDNER TANENBAUM, LLC and LINCOLN ROAD APARTMENTS II, LLC, Plaintiffs/Appellants/Counter-Appellees
v.
THE BENHAM COMPANIES, LLC; SAIC ENERGY ENVIRONMENT & INFRASTRUCTURE, LLC, a Delaware limited liability company; and SAIC CONSTRUCTORS, LLC, an Oklahoma limited liability company, Defendants/Appellees/Counter-Appellants.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE THOMAS E. PRINCE, TRIAL JUDGE

VACATED AND REMANDED; 
COUNTER-APPEAL DISMISSED

Robert L. Magrini, Alan W. Bardell, HAYES MAGRINI & GATEWOOD, Oklahoma City, Oklahoma, for Plaintiffs/Appellants

W. Brett Willis, Linda G. Kaufmann, JENNINGS TEAGUE, P.C., Oklahoma City, Oklahoma, for Defendants/Appellees

GREGORY C. BLACKWELL, JUDGE:

¶1 The plaintiffs, Gardner Tanenbaum, LLC, and Lincoln Road Apartments II, LLC (collectively, "Tanenbaum"), appeal a summary judgment granted to defendants, The Benham Companies, LLC, SAIC Energy Environment & Infrastructure, LLC, and SAIC Constructors, LLC (collectively, "Benham").

BACKGROUND

¶2 This case has a long and involved history, which we summarize as follows. Tanenbaum contracted with an architectural firm to design a multi-phase apartment complex in Oklahoma City. Tanenbaum terminated its contract with this firm after the company had completed plans for just the first phase of the project. Tanenbaum then hired Benham, another architectural firm, to provide the plans for phase two and other architectural and engineering services for the remainder of the project. Tanenbaum supplied Benham with the first architectural firm's drawings for phase one of the project.

¶3 After learning that Benham had its plans, the first architectural firm filed a federal lawsuit in 2008 against both Tanenbaum and Benham for conversion, breach of contract, tortious interference, and copyright infringement. Benham settled, and as part of the settlement agreement, two Benham employees gave affidavits pertaining to Benham's performance of the second phase of construction and their use of the first architect's plans. According to Tanenbaum, these affidavits contained false information that exposed Tanenbaum to considerable liability. Tanenbaum then settled with the first architectural firm.

¶4 Tanenbaum then brought the present action against Benham for breach of contract, contractual and implied indemnity, contribution, fraud, and negligence. Tanenbaum sought "lawsuit damages" (being the $257,939.86 it spent in defense of the federal suit), "settlement damages" (being the $325,000 it paid to settle that same suit), and "complete disgorgement" (being a return of the nearly $1 million paid to Benham over the course of their troubled relationship). The trial court granted partial summary judgment in favor of Benham in October 2016 on Tanenbaum's breach of contract claims related to a contractual confidentiality provision, as well as contribution, and contractual and implied indemnity. In July 2017, the trial court issued an order granting summary judgment in favor of Benham on Tanenbaum's lawsuit damages and disgorgement. Tanenbaum appealed this order in Case No. 119,326, but the Supreme Court dismissed the appeal as the order was not final. In July 2020, Tanenbaum filed a motion to reconsider and vacate the July 2017 order. The district court denied the motion to reconsider and vacate in February 2021. However, in that same order the trial court granted summary judgment in favor of Benham, stating "Benham is entitled to judgment on Tanenbaum's remaining claims because there is no evidence of recoverable damages." Tanenbaum appeals. Benham filed a counter-appeal in which they argue, in the alternative, that the trial court erred in denying summary judgment because Tanenbaum's claims are barred by the doctrine of litigation privilege.

STANDARD OF REVIEW

¶5 "The appellate standard of review of a summary judgment is de novo." Wing v. Lorton, 2011 OK 42261 P.3d 1122

ANALYSIS

¶6 Tanenbaum's appeal presents two questions. The first is whether Tanenbaum's costs related to the first lawsuit, including both its defense costs and the amount it paid to settle the case, are unavailable as damages a matter of law. Second, we must determine whether disgorgement of profits is an appropriate remedy. Because we vacate the trial court's judgment, we must also address Benham's counter-appeal, in which they argue that the trial court erred in failing to grant a separate motion for summary judgment it filed on the issue of litigation privilege.

Lawsuit Damages

¶7 To support its contention that its attorney's fees and costs paid in defense of the federal suit are recoverable in this case, Tanenbaum points us to Security State Bank of Comanche v. W.R. Johnston & Co., Inc. There, the Oklahoma Supreme Court held:

The general rule is that costs and expenses of litigation, other than the usual and ordinary court costs, are not recoverable in an action for damages, and such costs are not recoverable in a subsequent action; but, where the wrongful acts of defendant have involved plaintiff in litigation with others, or placed him in such relations with others as make it necessary to incur expense to protect his interest, such costs and expense should be treated as legal consequences of the original act.

Security State Bank of Comanche v. W.R. Johnston & Co., Inc., 1951 OK 40See also Griffin v. Bredouw, 1966 OK 226420 P.2d 546Safway Rental & Sales Co. v. Albina Engine & Mach. Works, Inc., 343 F.2d 129, 133 (10th Cir. 1965).

¶8 Benham objects to Tanenbaum's reliance on Security State Bank, arguing that Tanenbaum's lawsuit damages are "consequential damages" and thus precluded by the contract between the parties. Paragraph 6.3 reads:

No Liability is accepted by the Consultant [Benham]:

***

(c) for reliance upon any data, information, specification or other documents pertaining to the Service which are provided by the Client or third parties;

(d) for any economic, indirect, incidental or consequential loss, injury or damage or liability, including but not limited to loss of profit, business, production, income or revenue, reputation, or any other consequential damages incurred from any cause of action whatsoever ....

¶9 Benham reads paragraph 6.3(c) to mean that Benham is contractually relieved of liability because the first architect's plans were "information," or "other documents" contemplated by the provision. However, the meaning and purpose of 6.3(c) was to absolve Benham from liability caused by false, inaccurate, or misleading information or other documents provided by Tanenbaum or third parties. Paragraph 6.3(c) covers reliance, but not misuse, as Tanenbaum claims. Tanenbaum's accusations are not that Benham's reliance on the first architect's plans caused Tanenbaum to become embroiled in litigation, but rather that Benham's malfeasance caused Tanenbaum's damages. Thus, by its own language, 6.3(c) is inapplicable.

¶10 Next, Benham reads 6.3(d) to mean that Tanenbaum's damages are precluded by the contract because they are properly categorized as "consequential damages." However, we join other Oklahoma courts, which have read similar contractual language as limiting a party's liability of breach of contract, not tort liability. "[A]s other courts have recognized, the phrase 'consequential damages' ordinarily refers to contract damages, not tort damages." Abercrombie & Fitch Stores, Inc. v. Penn Square Mall Ltd. P'ship, 2018 OK CIV APP 56425 P.3d 757Kaste v. Land O'Lakes Purina Feed, LLC, 284 Or.App. 233, 392 P.3d 805, 811 (2017)). However broad the language of subsection (d) might be here, we cannot read it to exculpate Benham from damages directly related to the type of tortious conduct they are alleged to have engaged in here. Rather, as in Abercrombie, the contract language was effective to relieve Benham only from consequential damages that might flow from its breach of the contract.

¶11 To support its claim that the losses in question are consequential damages, Benham directs us to cases from other jurisdictions where courts held that attorney's fees were characterized as consequential damages. See Montana Owners' Ass'n v. La Noue Development, LLC, 353 P.3d 563, 578-99 (Or. 2015); Armstrong Construct Co. v. Thomson, 390 P.2d 976 (Wash. 1964); Madden v. Antonov, 966 F. Supp.2d 851, 860-61 (D. Neb. 2013). In fact, the listed cases occurred in states with substantially similar rules as Oklahoma as to the recoverability of attorney's fees from third parties. See Huffstutter v. Lind, 250 Or. 295, 301, 442 P.2d 227 (1968); accord Security State Bank of Comanche v. W.R. Johnston & Co., Inc., 1951 OK 40See Security State Bank, 1951 OK 40

Settlement Damages

¶12 We next turn to Tanenbaum's argument that the $325,000 paid to the first architect to settle the federal lawsuit may be within the class of recoverable damages. In Tanenbaum's view, Benham's tortious conduct forced Tanenbaum into settling with the first architect. Tanenbaum argues that the settlement amount is recoverable because the settlement was reasonable under the circumstances, and it was directly attributable to Benham's malfeasance. In support of its contention, Tanenbaum points to an Illinois case holding that money paid in a settlement agreement is recoverable from a third party if the third party's actions forced the settlement. See Union Planters Bank, N.A. v. Thompson Coburn LLP, 402 Ill. ApP.3d. 317, 935 N.E.2d 998 (2010). Tanenbaum urges this court to hold that money paid in settlement is recoverable.

¶13 Generally, the amount of damages awarded is a question for a jury. Estrada v. Port City Properties, Inc., 2011 OK 30258 P.3d 495Security State Bank of Comanche v. W.R. Johnston & Co., Inc., 1951 OK 40Jones v. Mercy Health Ctr., Inc., 2006 OK 83155 P.3d 9only when there is a complete lack of evidence and no reasonable inference tending to link the defendant's negligence to the plaintiff's harm."). Summary judgment was thus inappropriate on this issue because there is a substantial controversy as to whether Tanenbaum's claimed damages were directly caused by Benham's allegedly wrongful conduct.

Complete Disgorgement

¶14 Tanenbaum also claims that the district court erred in finding that complete disgorgement of the funds paid to Benham was unavailable as a remedy. Disgorgement, being an equitable remedy, is unavailable when an adequate remedy at law exists. Krug v. Helmerich & Payne, Inc., 2013 OK 104320 P.3d 1012

Benham's Counter-appeal

¶15 Finally, we note that Benham filed a counter-appeal, in which it argues that the district court erred by not granting Benham's separately filed motion to dismiss (and later, a separately filed motion for summary judgment) on the grounds that Tanenbaum's lawsuit is barred by litigation privilege. The court denied each of those motions. Benham's counter-appeal here is, in effect, an impermissible attempt to appeal an interlocutory order. In the ordinary case, such as we have here, appeals are not permitted from a denial of a dispositive motion. Edwards v. Andrews, 2016 OK 107382 P.3d 1045Myers v. Missouri Pacific Railroad Co., 2002 OK 6052 P.3d 1014

¶16 VACATED AND REMANDED; COUNTER-APPEAL DISMISSED.

WISEMAN, P.J., and RAPP, J., concur.

FOOTNOTES